WILLIAM VICK *v.* J. J. CHEWNING'S HEIRS.

1. SCIRE FACIAS: WHEN BARRED.—The right to issue *a scire facias* to revive a judgment against the administrator or heirs of the debtor, is barred after the lapse of seven years from the date of its rendition, even in cases where executions have been regularly sued out within seven years prior to the issuance of the *sci. fa.* Hutch. Code, 830, 831, ¿ 8. HANDY, J., dissented.

2. SAME.—The writ of *scire facias* to revive a judgment against the administrator or heirs of the debtor, being merely process to a new execution of the judgment, is allowable in all cases where the judgment is a valid and subsisting debt, and where the creditor would be entitled to his execution but for the death of necessary parties to the record. Per HANDY, J., dissenting.

IN error to the Circuit Court of Warren county. Hon. Richard Barnett, judge.

On the 30th of January, A. D. 1842, William Vick obtained a judgment against James J. Chewning for $9258, in the Circuit Court of Warren county. An execution of *sci. fa.* issued on this judgment on the 7th day of February, A. D. 1842, against the defendant, Chewning, and was returned *nulla bona.* On the 9th of June, A. D. 1842, a *fi. fa.* for costs, issued to Warren county against William Vick, the plaintiff below, and was returned *nulla bona.*

On the 20th of June, A. D. 1846, on motion of E. D. Downs, clerk of the Warren court, there was an order of sale of the judgment made for payment of costs. On the 20th of August, 1846,

an order for sale issued; and on the 24th of October, 1846, the judgment was sold and transferred by the sheriff to the defendant, Chewning.

On the 22d of February, 1851, Vick sued out another execution, taking no notice of the sale to Chewning. This was also returned *nulla bona.*

On the 22d of October, 1852, Vick sued out a *scire facias,* which was quashed below; and on the 8th of November, 1852, Vick sued out another *scire facias,* to revive his judgment against Chewning's heirs, alleging his death since the rendition of the judgment. By an agreement of counsel filed, it appears that Chewning's heirs appeared and pleaded the Statute of Limitations of seven years; that is, that more than seven years had expired from the passage of the Act of 1844, and since the date of the judgment, before the suing out of the *scire facias.* This plea was sustained below, and the *scire facias* dismissed; and the propriety of that decision below is the point for decision.

T. *J.* and *F. A. R. Wharton* and *A. Burwell,* for plaintiff in error.

The plaintiff in error, by suing out execution in the lifetime of Chewning, within seven years after the judgment was rendered, did every thing which the statute requires to preserve the vitality and efficacy of his judgment. At the date of Chewning's death the judgment was in full force. Two days prior to the time when the Act of 1844 would have taken effect as a bar to the issuance of execution, the last execution was issued: within eighteen months or two years thereafter, C. died.

It is now held, that notwithstanding the plaintiff had a valid subsisting judgment in full force, unimpaired, not vacated or reversed at that time, he is barred of and from all benefit of said judgment, or the means of enforcing payment thereof, not because the judgment itself is barred, but because he cannot avail himself of the process or ceremonies of proceeding, by which the rights he holds under said judgment may be enforced. The judgment is in full force, as a judgment, to-day. But of what avail? It is not denied that a judgment creditor can, by suing out executions within

periods of seven years, preserve his judgment for an indefinite time, or rather, so long as his debtor lives. But it is said that rule prevails only during the lifetime of the debtor; that instantly on his death, the creditor loses, not his judgment, but only the right to have execution thereof; that before he can enforce execution thereof, he must make the representatives parties, which can only be done by *sci. fa.;* but a *sci. fa.* cannot issue, because prohibited by the Act of 1844.

Now, unless the language be so *conclusive and exclusive* as to forbid construction or inference, it will not be assumed that the legislature designed to deprive the judgment creditor of this remedy, which "is mere process for obtaining execution, rendered necessary by the death of the defendant."

Of what possible benefit can it be to a judgment creditor that he has the right, under the statute, to have execution within seven years from the date of the last execution, if, after the death of the debtor, the next heir may deprive him of that right? In other words, is it a right subject to be defeated by the death of the debtor? What reason is there for supposing that the legislature intended to adopt one rule for the *living*, and another for the *dead* debtor? What equity can there be in such an interpretation?

Unless the rule we insist upon involves so violent, so flagrant a contradiction of the plain language of the Act, we insist that reason, equity, and sound precedent, demand its application. So far from its being true, however, that it involves such contradiction, it is the only one which can be put upon the act, so as to preserve consistency and harmony in all its parts. There never was a statute which, in its construction, more imperiously demanded the enforcement of the maxim that it should be so construed, "*ut res magis valeat, quam pereat.*"

If the very literal and rigorous interpretation which the majority of the court has given the act be admissible, we insist that your honors have stopped short of the point to which such rule of interpretation would conduct. I think it might as well be contended that judgments cannot be revived at all by *sci. fa.*, whether seven years have elapsed or not since the date of the judgment; for either the eighth section of the Act of 1844—the one under con-

sideration—is to be construed together, in all its parts, and the integrity of the whole preserved, by seeing what qualification one part imposes upon another, (which we maintain is the proper mode of construing it,) or else you will treat the section as made up of three distinct clauses, each clause containing an independent provision; as, for example, 1st. Judgments in any court of record in this State, *shall not be revived by scire facias.*  2d. Nor shall any action of debt be instituted thereon after the expiration of seven years next after the date of such judgment.  3d. Nor shall any person sue out an execution on any judgment or decree, after seven years from the time the last execution issued on such judgment or decree.  Just as if it was a statute of three distinct sections, made up of the above three clauses—the first absolutely prohibiting of a *sci. fa.;* the second and third limiting the period within which actions of debt might be instituted, or executions issued upon judgments, to seven years.

Obviously, the term *scire facias,* as used in this statute, has relation alone to the *judgment debtor.*  The error into which, as we think, opposing counsel have run in their briefs on file, is in assuming that process of *sci. fa.* can only issue against representatives or heirs of a *deceased judgment debtor.*  They certainly have proceeded upon this assumption.  Is it well founded?  That it is not, it is only necessary to cite a few cases in which the contrary rule and practice have prevailed.  1st. Where execution has not issued within a year and a day after judgment rendered, a *scire facias* must issue; or where no execution on a forfeited forthcoming bond has issued for more than a year and a day after the forfeiture, it will be irregular to issue one without revival by *scire facias.*  3 How. 25; 2 S. & M. 510.  A *sci. fa.* lies against a sheriff who levies money on a *fi. fa.,* and retains it in his hands.  3 Tom. Law Dic. 426.

If execution is stayed by injunction, though the act of the defendant, yet the court will not take notice thereof; in such case there must be a *scire facias;* the staying the proceeding by injunction, does not appear to the court by any record of its own; nor is the filing a bill in equity any revival of the judgment, as in the case of a writ of error.  3 Tom. Law Dic. 428 ; 6 Mod. 288.

But suppose we are mistaken as to the application of the term in our Act of 1844; and let it be further supposed, that in this case the plaintiff had regularly issued executions to every term of the court after the recovery of his judgment, down to the period of the death of Chewning, still, at the latter period, more than seven years had elapsed from date of the judgment, and then, by parity of reasoning, it would be held that he was barred of *sci. fa.* to revive against the heirs. At what time did the right to a *sci. fa.* against the heirs accrue? At the death of the ancestors, of course—it could not be sued out before that time. Very well; it is sued, we will suppose, the very hour after his death; the bar is pleaded then; and thus we have the *exercise* of a right *barred at the very moment the right accrues.*

From this examination, we must suppose that the legislature did not intend the statute to have such a construction; and unless they have been so unfortunate in the terms employed as to compel the court to say—as impolitic and inequitable as the construction may be—"*ita lex scripta est,*" a more liberal interpretation will be indulged. We think this course may be adopted—the more reasonable rule established—without any violence to the provisions of the act under review.

*W. C.* and *A. K. Smedes,* for defendant in error.

We insist that the decision below was correct.

The language of the statute is, "Judgments in any court of record in this State shall not be revived by *scire facias,* nor shall any action of debt be instituted thereon after the expiration of seven years next after the date of such judgment; nor shall any person sue out an execution on any judgment or decree after seven years from the time the last execution issued on such judgment or decree." Hutch. Code, 830, 831. These limitations commenced running on the 24th of February, 1844, the date of the passage of the act, according to its eighteenth section. Hutch. Code, 832.

The naked statement of the fact that no *scire facias* was sued out in this case until the 22d of October, 1852—more than seven years from the passage of the act—would seem to be a conclusive answer to the proposition that this *scire facias* lawfully issued.

It issued in the very teeth of the prohibition of that statute. That statute says, no *scire facias* shall issue "after the expiration of seven years next after the date of such judgment;" here is a *scire facias* which *has* issued after the expiration of seven years from the date of the judgment. It therefore has the ban of the statute upon it. If the statute be valid, and its terms, express and unmistakable, present the true rule for its construction, it is difficult to see how its positive prohibition can be evaded. The statute says a certain thing shall not be done. The parties here are attempting to do it. Is the statute to prevail? It must; however harsh and unreasonable its operation, unless the parties can bring themselves within some exception to the statute, or show *some provision of law* which exempts them from its operation. This proposition seems to be admitted; and it is insisted that what is called *the equity of the statute*, does create a saving in a case of this kind in behalf of parties who are likely to be involved in a loss of their debt, without any fault of their own. It is said, that if Chewning were alive, Vick, when he sued out his *scire facias*, would have been entitled under the facts of the case, to an execution against Chewning; and would even now be so entitled, and hence, it is argued, it follows he must be equally so entitled against his administrator and heirs. That it would be inequitable and contrary to the clear intent of the legislature to allow the death of a party, against whom there was when he died, a living, operative, substantial cause of action, to operate to the release and discharge of that cause of action, which, it is said, would be the case if the construction contended for by Chewning's heirs were to prevail. That, taking the whole statute together, it is obvious that the legislature intended, and the equity and justice of the case requires the court so to hold, that this further proviso should be engrafted on the statute, viz: that no *scire facias* shall issue to revive a judgment, when more than seven years have elapsed *from the issuance of the last execution.* That substituting this for the language of the statute, *from the date of the judgment*, or making it an additional provision in the statute, right and justice prevail, the statute is consistent and harmonious, the rights of parties are preserved, and no wrong done to any one. But without this, the statute is made to work great in-

justice, and to destroy the positive rights of parties. We think we have stated the ground of objection to the operation of the plain words of the statute, fairly.

It is a sufficient answer to this, that it is not so provided in the law, and the language of the statute *is not capable* of the construction contended for. It may have been a *casus omissus:* one too, *valde defensus;* still it is a *casus omissus,* which it is beyond the power of the court to supply. The legislature have said that no *scire facias* shall issue to revive any judgment after the expiration of seven years from the passage of the act. More than seven years here have elapsed from that time, and therefore the *scire facias shall not issue.* There is no place for construction; no room for doubt. There is nothing to construe. Seven years have elapsed from the date of the judgment, and the *scire facias* is absolutely and in all cases and without qualification PROHIBITED; the parties not being under any disability.

But it is said the construction, lying on the face of the statute and in consonance with its express words, is not in accordance with the *intent* of the legislature, which it is said is to be gathered from the whole act, and was to save the debt to the plaintiff, in *all* cases where he had not slept on his rights for *seven* years. Let us look into this question of *intent.* In the first place, it is to be gathered from the *language of the law: Id totum est.* If there be no ambiguity in that, you can go no further to ascertain their intent. To argue that the legislature intended in *all* cases to save the debt to parties who had not been guilty of *laches* for seven years, is a *petitio principii;* an assumption of the very point involved. It is obvious that the legislature intended that *so long as the parties were living,* the plaintiff might retain his remedy, not merely for seven years, but if the parties lived so long, for seventy times seven years; provided they issued an execution at intervals of every seven years. This is the rule for *living persons;* but when the statute came to establish a rule for *dead* persons, it laid down a different rule; and said, if a party has not made his debt in seven years from the rendition of his judgment, it shall be as against the representatives of such deceased person, *incapable of being revived.* It shall be presumed to be satisfied. It shall be

itself dead. His right, like the *actio personalis*, shall die with his debtor. Seven years having elapsed without the enforcement of the judgment, and the debtor being dead, the law will presume the judgment satisfied, and that the evidence of payment died with the debtor; or at all events will not permit any inquiry to be made on that point, by refusing to the party, plaintiff, a *scire facias* to revive his judgment, and put himself in a condition to enter upon that inquiry. This construction is a reasonable one, makes the statute consistent with itself, harmonizes all its provisions, and is in accordance with the express and positive language of the law. And it is further maintained, by looking into the provisions of the law, antecedent to the Act of 1844, giving the right of *scire facias* in any case. The right to a *scire facias* is matter of express grant. It is exclusively *a statutory right*. It did not exist at common law. The statute of 1822, provided that "Judgment in any court of record in this State, may be revived by *scire facias*, or an action of debt may be brought thereon, within twenty years next after the date of such judgment, and not after." Hutch. Code, 826. This statute, in unlimited terms, authorized the issuance of a *scire facias* in all classes of cases, at any period "within twenty years after the date of the judgment." But the Act of 1844 is not an "enabling" statute at all. It confers no right to the issuance of a *scire facias* at all. It is *prohibitory* in its terms. It says, judgments *shall not be revived by scire facias after the expiration of seven years next after the date of such judgment.* This confers no right to a *scire facias*, in any case. It prohibits it in the given class of cases; grants it in none. The right to a *scire facias* comes from the Act of 1822; and, according to the Act of 1844, one *cannot issue* where the judgment was rendered before the passage of the act, and seven years have elapsed since that time. This appears to us to be an unanswerable view of the true construction of the statute.

FISHER, J., delivered the opinion of the majority of the court.

The appellant on the 30th of January, 1842, recovered a judgment in Warren Circuit Court against James J. Chewning. Executions at various times were issued upon this judgment, the last execution appearing to have issued on the 22d of February, 1851.

Chewning the debtor, having died some time prior to the 22d of October, 1852, the exact time of his death not being stated or shown, a writ of *scire facias* to revive the judgment against his administrator, was issued by the clerk of said court on the day above named. The administrator appearing, interposed as a defence to the writ of *scire facias*, the Statute of Limitations, and the court upon the above state of facts, held the statute to be a good defence, and thereupon refused to revive the judgment against the administrator. The statute is in these words, "judgments in any court of record in this State, shall not be revived by *scire facias*; nor shall any action of debt be instituted thereon after the expiration of seven years next after the date of such judgment; nor shall any person sue out an execution on any judgment or decree after seven years from the time the last execution issued on such judgment or decree." Hutch. Code, 830, 831, § 8. If this statute be taken according to the plain import of its words, what must we understand to have been the intention of the legislature? Certainly that a judgment cannot be revived by *scire facias* or made the foundation of an action of debt, if seven years had elapsed before such proceeding was commenced. The statute is positive in its terms, that the thing shall not be done after the period of seven years from the date of the judgment, or in this case, we may say from the passage of the law. The court cannot, in the construction of the statute, engraft upon it any other exceptions, than such as the legislature declared in the enactment of the law.

It may be true, that the plaintiff has a right to his execution against the debtor, so long as he pursue this remedy without the aid of a *scire facias*. But it must not be supposed that, because the party is not restricted as to the time in which he may have one remedy, that he is not therefore restricted as to other remedies.

The question is, can the plaintiff proceed with the execution of his judgment without the aid of a *scire facias*? The statute declares, that this remedy, whether it be considered merely as process, or an original proceeding, shall not be employed after the lapse of seven years, from the date of the judgment.

SMITH, C. J., concurred.

HANDY, J., delivered the following dissenting opinion.

I. cannot concur in the opinion of the majority of the court in this case.

The provision of the statute in question is, that "*judgments* in any court of record in this State, shall not be revived by *scire facias*, nor shall any action of debt be instituted thereon after the expiration of seven years, next after the date of such judgment; nor shall any person sue out an execution on any judgment or decree after seven years, from the time the last execution issued on such judgment or decree," &c.

The question is, whether, in a case where more than seven years have elapsed since the date of the original judgment, and in which an execution has been issued before the expiration of seven years after the rendition of the judgment, and in the lifetime of the original defendant, a *scire facias*, issued within seven years from the date of the execution, but after the lapse of seven years from the date of the original judgment, may be maintained to revive the judgment, and have execution against the representatives of the original defendant, who has died since the issuance of the last execution.

It is true, that the literal terms of the first clause of the statute would forbid the *scire facias* in all cases, after the lapse of seven years from the date of the judgment. But this provision must be construed with reference to the subsequent clause, which distinctly recognizes the right to have execution of the judgment at any time within seven years, from the time the last execution issued. Now it is well settled that a *scire facias*, such as this is, is not in its nature an original action, but mere process for obtaining execution, rendered necessary by the death of the defendant. Such is the object and prayer of the writ, and such is the award of the court, *fiat executio*, &c. When, therefore, the statute gave the right to have execution within seven years from the date of the last execution, it is to be presumed that it was intended to allow all the means necessary to the enjoyment of the right. Thus, if the last execution issued were in such a condition as to render it

necessary to obtain an order of court awarding execution, as in case of an entry of satisfaction appearing upon it, when in fact there was no satisfaction; or in case of there appearing to be what would be a presumed satisfaction in law, it would be competent for the court after the lapse of seven years from the date of the judgment, but within seven years from the date of the last execution, to entertain a motion, and award execution.

A statute, in giving a remedy in general terms, gives all the established means necessary to the enjoyment of the right; and in giving the right to have execution, if that right cannot be exercised without the *scire facias*, the statute entitled the party to a *scire facias*, by necessary implication.

I think that the true spirit of the section of the statute in question is, that new vitality to all intents and purposes, except as to the preservation of the lien, should be given to the judgment by the issuance of an execution within seven years from the date of the judgment, or within seven years from the date of a previous execution; and that the right conferred to have execution within the period prescribed, carried with it the right to have the *scire facias*, if the circumstances of the case rendered it necessary; because the *scire facias* is but process to obtain execution, without which the right granted to have execution would be nugatory.

A re-argument was applied for by plaintiff in error, but it was refused.