JEFFERSON J. HUGHES *v.* EDWARD C. WILKINSON'S LESSEE.

1. DEED: VENDOR AND VENDEE: CONDITIONAL CONVEYANCE: RESCISSION BY PAROL.
—If a deed conveying land provide that the grantee shall have a stipulated
time in which to determine whether he will complete the purchase or rescind
the trade, and in case he rescinds, that the land shall "revert" to the grantor,
a rescission within the stipulated time may be proven by parol, and will revest
the title in the grantor without any formal act of conveyance.

2. SAME: ANCIENT DEED: CASE IN JUDGMENT.—L. conveyed to A. B. and C. a
tract of land, upon the condition that the bargainees should have two years in
which to determine whether they would complete the purchase, and pay the
purchase-money, or rescind the trade, and in case they determined to rescind,
that then the land should "revert" to the bargainor. Soon after the expiration
of the two years, L. conveyed the land to A. alone, reciting in the deed that
soon after the execution of the original agreement, that B. had died, without
having paid any of the purchase-money, and that C. had, within the two years,
released his interest to A. For thirty years thereafter, neither B. nor C., nor
any person claiming under them, set up any claim to the land, which had also
been held adversely for ten years. *Held,* that, under the circumstances, it
would be presumed that the recitals in the deed from L. to A. were true, and
that the deed was regular.

3. DEED: REGISTRATION: POWER OF ATTORNEY TO SELL LAND BY ACT OF 1822,
HUTCH. DIG. 606, § 6.—A power of attorney to sell and convey land is a contract
in relation to land, and is embraced in the Statute of 1822, Hutch. Dig. 606,
§ 6, which provides, that "every title, bond, or other written contract in relation
to land, may be proved, certified, or acknowledged, and recorded in the same
manner as deeds for the conveyance of land."

4. SAME: RIGHT OF JUSTICE OF THE PEACE TO TAKE ACKNOWLEDGMENT.—Previous
to the Act of 1836, Hutch. Dig. 704, Art. 15, a justice of the peace was not
authorized to take acknowledgments of deeds of conveyance of lands, unless
the lands conveyed were situated wholly or in part in the county in which he
held his office.

5. SAME: EVIDENCE: ANCIENT DEED.—Although a registered copy of a power of
attorney to sell lands, which appears to have been acknowledged before a jus-
tice of the peace, who had no authority to take the acknowledgment, because
the lands were not situated in his county, is not admissible in evidence as a
legally recorded instrument; yet, after the lapse of thirty years from the making
and registration of a deed under it, and the non-claim of the principal for that
period of time, it is admissible, as a circumstance, to show that the deed was
executed by proper authority.

6. SCIRE FACIAS: REVIVOR.—The office of a *scire facias* to revive a judgment, is
to have execution of that judgment: and a judgment of revivor is an award of
execution of the original judgment, and not a judgment *in numero:* and hence,

if the *scire facias* and judgment thereon be void, they will not have the effect to destroy or impair the force of the original judgment, but all subsequent proceedings in execution of the original judgment, will have the same legal validity and effect, as if no *scire facias* had been sued out or judgment of revivor rendered. See *Locke* v. *Brady*, 30 Miss. R. 21; *Vick* v. *Chewning*, 31 Ib. 201.

7. REVIVOR: SALE UNDER EXECUTION, WHEN PLAINTIFF IS DEAD.—A sale under an execution issued and tested after the death of the plaintiff, and without revivor, is not void, nor is it voidable at the instance of strangers to the judgment. Whether it would be avoided at the instance of the defendant, *Quære?* It seems that it would not.

8. RECORD: EJECTMENT.—The entry on the minutes of the court, of the usual consent rule in an action of ejectment, is conclusive for the purposes of that suit.

ERROR to the Circuit Court of Yazoo county. Hon. E. G. Henry, judge.

This was an action of ejectment in the court below, by plaintiff's lessee, to recover of the defendant an undivided moiety of two lots in Yazoo City. The plaintiff in error appeared and was admitted as a defendant, and entered into the usual consent rule, as appears by an entry in the minutes of the court, and pleaded not guilty.

The plaintiff, after showing the entry of the *locus in quo* from the Federal Government by Greenwood Leflore, gave in evidence an agreement entered into between Leflore, of the one part, and George W. Adams, William H. Doke, and Josiah S. Doke, of the other part, and dated, 14th April, 1826, and which, in substance, is as follows :—

That Leflore, for the consideration of $6350 to be thereafter paid, " doth bargain, sell, confirm, and convey" unto Adams and the Dokes a tract of land, including the *locus in quo*, " to have and hold the said land on the following express condition, viz.: Adams and Dokes anticipate engaging in mercantile and other pursuits on the aforesaid land, and they are to have the privilege of making a satisfactory trial of all its advantages, for a term not exceeding two years from October next, and by that period, or earlier, they are to decide unequivocally, whether they take said land, at the price aforesaid, and in the event of their determining to make the purchase final, they are to pay said Leflore, his heirs, or assigns, upon his or their making a good and sufficient title to the said land (and this instrument makes it binding on said Leflore, his heirs or assigns, to do so,

at the request of the said Adams and Dokes), the aforesaid sum of $6350, as follows ;" (the first payment is to be made on the 1st October, 1828, and the remainder in instalments afterwards). "But if, on the other hand, the said Dokes and Adams should, prior to the 1st of October, 1828, conceive it inexpedient or disadvantageous to them to make the final purchase, it is distinctly understood they alone have the right to rescind the agreement, and the land reverts to said Leflore," with the buildings and improvements in the mean time erected and made. It was further stipulated, that the bargainees should have the right to use the timber on the land, and to make " any arrangement and disposition of the land in relation to their interest, as they deem advantageous to themselves, free from restraint or control of said Leflore."

The plaintiff then offered in evidence, a deed from Leflore, conveying the said land to the said George W. Adams. This deed was dated the 12th day of December, A. D. 1828, and registered on the 28th of February, 1829. The deed recited the agreement made between Leflore and Adams and the Dokes, above noticed, and further, that "the said William H. Doke died soon after the execution of the said agreement, without having, on his part, paid any portion of the purchase-money stipulated by said agreement to be paid, and that the said Josiah S. Doke, on the 1st of November, 1827, had sold all his right and interest in the land to Adams. The deed purports on its face to be made in pursuance of the said agreement of the 14th of April, 1826.

To the introduction of this deed the defendant objected, on the ground, that it was not such an instrument as the law requires to be recorded, and further, that there was no proof of the recital contained in it. The court overruled the objection, the plaintiff at the time stating that he had no intention to offer proof of the recitals.

The plaintiff, further deraigning his title, showed that an undivided interest of the land had been conveyed by Adams to Hiram G. Runnels, Daniel W. Wright, and Isaac Caldwell, on the 9th of February, 1831, and that previous to that time, the town of Manchester (now Yazoo City) had been laid off on the same, and that the remaining interest had been conveyed to one Johnson.

In the further progress of the trial, the plaintiff offered in evi-

dence a certified copy of a deed from the administrator of said Johnson, and from Wright, Caldwell, and Runnels, to one Davis. This deed on its face purported to be executed on the part of Wright, by H. G. Runnels, his attorney in fact, and was dated 24th of April, 1831, and registered on the 2d of May, 1831. The reading of this deed was objected to by defendant, but it was allowed to be read as the deed of all the grantors, except Wright. The plaintiff then offered to read from the registry of deeds of Yazoo county, the registered copy of a power of attorney from Wright to Runnels, dated 11th of January, 1831, and acknowledged before a justice of the peace of Hinds county, on the next day. This power of attorney granted authority to Runnels, to sell and convey the property owned by the principal in Manchester. To the introduction of this evidence the defendant objected, because, 1st, "it was not properly on record;" 2d, "it was acknowledged before a justice of the peace of Hinds county." The objection was overruled, and the power of attorney read to the jury.

Plaintiff then showed a conveyance of the *locus in quo* by Davis to Rutherford and Bullock, on the 22d of June, 1831. He then read in evidence the record of a judgment recovered in the Circuit Court of Yazoo county, by Lucas and Eskridge against said Rutherford, on the 24th of April, 1834. He then showed a *scire facias*, dated 31st of March, 1843, against the heirs and terre-tenants of said Rutherford, to revive the judgment, and a judgment of revivor rendered 15th of May, 1843. An execution issued 28th of June, 1843, reciting the revivor, and commanding the sheriff to collect the money recovered in the original judgment, of the lands and tenements of Rutherford, which had descended to his heirs, or was in possession of the terre-tenants. This execution was levied on the *locus in quo* and the land sold to plaintiff, and the sheriff's deed made to him.

Defendant then offered to prove that both Eskridge and Lucas had died before the issuance of the *scire facias*, to revive the judgment in their favor against Rutherford's heirs, and that no administration had been granted on the estates of either of them. Upon plaintiff's objection, this evidence was not permitted to go to the jury.

The defendant read in evidence several deeds to show title in

himself, but as it was not insisted here that they were sufficient for that purpose, it is unnecessary to notice them in detail.

The plaintiff had verdict and judgment for the land sued for. The defendant moved for a new trial, which being refused, he excepted, and sued out this writ of error.

*N. G.* and *S. E. Nye,* for plaintiff in error.

*George B. Wilkinson,* contra.

HANDY, J., delivered the opinion of the court.

This was an action of ejectment, to recover an undivided moiety of two lots in Yazoo City. The case has been heretofore before us, and is reported in 28 Miss. 600.

The lessor of the plaintiff, in deraigning his title, showed that the premises in controversy were granted by the United States to one Leflore, and offered and read in evidence a contract in writing, entered into between Leflore, of the one part, and George W. Adams and Joseph S. and William H. Doke, of the other part, dated 14th April, 1826, whereby, in consideration of a stipulated sum of money, to be thereafter and upon condition paid, Leflore conveyed the premises to Adams and the Dokes, but upon condition that the bargainees should have until October, 1828, to determine whether they would complete the bargain and take the land, with the right to them to rescind the contract, in which event the land was to revert to Leflore; and with the further privilege to them to make any arrangement in relation to their interest in it which they might deem advantageous. He then offered in evidence a deed, dated 12th December, 1828, from Leflore to Adams, conveying the premises to Adams, reciting the previous agreement of April, 1826, and setting forth that William H. Doke had died soon after the execution of that agreement, without having paid any part of the purchase-money; that Josiah S. Doke had, on the 11th November, 1827, released all his interest to Adams, and that Adams had become the sole owner of the premises. To the admission of this deed, the defendant below objected on the ground that there was no proof offered to establish the recitals contained in it. But the court overruled the objection, and permitted the deed to be

read; to which the defendant excepted. And this is the first ground of error relied on.

. We think that the evidence was properly admitted. No claim was set up on the part of the Dokes, or of any one claiming under them. Their interest in the land, by the terms of the agreement, was not complete, but conditional, with the privilege to the bargainees to make any arrangement in relation to their interest that they might deem proper. It was provided, that, on failure to complete the contract of purchase by the bargainees, the land should "revert" to the bargainor. It, therefore, required no formal conveyance from them to restore the title to him; and it was competent to show that they abandoned the contract, or by parol agreed that Adams should take the benefit of it himself. This might be shown by the acts of the other parties interested in the contract, in a case where there was no claim set up by the Dokes, or any one claiming under them; and under such circumstances, and after the lapse of so great a number of years, without the assertion of any claim on behalf of the Dokes, it must be presumed that the deed from Leflore to Adams was regular and by the consent of the parties concerned in the original agreement.

As a further link in the chain of title, the lessor of the plaintiff offered in evidence a deed purporting to be made by William Ward, administrator of Benjamin Johnson, Hiram G. Runnels, Isaac Caldwell, and Daniel W. Wright, by Hiram G. Runnels, his attorney in fact, dated 23d April, 1831, and acknowledged and recorded on the 2d May, 1831, to one Davis. To the admission of which, so far as it affected the title of Daniel W. Wright, the defendant objected, because the power of attorney, in virtue of which Runnels purported to act for Wright in executing the deed, was not produced or proved. And, in order to obviate the objection, the plaintiff's lessor introduced from the record of the Probate Clerk's office of Yazoo the record book of deeds, &c., and offered to read from it a power of attorney purporting to have been made by Daniel W. Wright to Runnels, dated 11th January, 1831, acknowledged before a justice of the peace of Hinds county on the 12th day of that month, authorizing Runnels to execute the deed as attorney in fact.

The defendant objected to the introduction of this evidence,

because the power of attorney was not properly a matter of record and evidence as such; but the objection was overruled, and the record permitted to be read; and to this the defendant excepted.

The first ground of the objection is, that the power of· attorney was not authorized to be recorded by the laws of this State, and therefore that the record was not legal evidence.

It is true that there was no statute of this State at the date of this instrument, authorizing the registration of powers of attorney *eo nomine;* but the Statute of 1822 provided that "every title, bond, or *other written contract in relation to land,* may be proved, certified, or acknowledged, and recorded in the same manner as deeds for the conveyance of lands; and such proof, acknowledgment, or certificate, and the delivery of such bond or contract to the clerk of the proper court to be recorded, shall be taken and held as a notice to all subsequent purchasers of the existence of such bond or contract." Hutch. Code, 606, § 6.

This language is broad enough to embrace a power of attorney for the sale of land. It is not confined to contracts *for the sale* of land, but extends to any contract *in relation to* land. The instrument gives the power to make contracts for the sale of land; and good policy requires that the evidence of such authority should be preserved in some permanent form, in order that the titles acquired under such instruments should not be subject to the uncertainty and hazard attending the preservation and proof of instruments *in pais,* liable as they are to loss, and difficult as they may be to be proved, after the lapse of many years. In this view, the statute is a protection to the rights of purchasers; and as that was the main object of the statute, such a construction should be given to its general provisions as will promote that object. And if a *contract for the sale* of land be authorized to be recorded for the security of the purchaser, no sound reason can be perceived why an instrument giving a power to make such a contract should not be embraced within the general language and policy of the statute.

But in order to admit such an instrument to record, it must be "proved, certified or acknowledged" as deeds of conveyance are required to be done. And this presents the second ground of the objection, which is, that the instrument was acknowledged before a

justice of the peace of Hinds county, the land lying in Yazoo county, and that such an acknowledgment was insufficient.

This acknowledgment was made in the year 1831, and by the statute then existing, a justice of the peace was not empowered to take an acknowledgment of a deed of conveyance of lands, unless they were situate wholly or in part in the county in which he held his office.  Hutch. Code, 605, § 1.  Notaries public were afterwards authorized by the Act of 1833, to take acknowledgments out of the county of their residence, Ib. 617 ; and by the Act of 1836, justices of the peace were authorized to exercise all the powers previously belonging to notaries public.  Ib. 704, art. 15.  But these two last statutes were passed after the acknowledgment under consideration was made, and of course can have no effect upon it ; and the conclusion is unavoidable, that the acknowledgment was not according to law, and consequently that the power of attorney was not properly recorded, so as to give the record the force of evidence.

But notwithstanding the record was not admissible as having the force and legal effect of a duly recorded instrument, we think that it was competent evidence as a fact connected with the other circumstances of the case, to be submitted to the jury, and from which they might come to the conclusion, that the conveyance was executed by Runnels, by the authority of Wright.  The circumstances of the case go strongly to justify the presumption that the deed was executed by Runnels, under proper authority of Wright. It appears that the conveyance was of town lots, in a regularly established town ; and the presumption is, therefore, very strong, that possession must have passed at the time under the deed to the grantee. The lots appear to have been subsequently conveyed through several persons, and among others to one Rutherford, whose heirs and terre-tenants are shown to have been in possession in April, 1843, and under whom the plaintiff's lessor claims title immediately. No claim on the part of Wright, or of any one claiming under him, appears to have been set up since 1831, and the possession of the lots, in all probability, passed under the deed of Runnels of that date, and has been held adversely since that time; or if not, it clearly appears to have been held adversely, at least since April, 1843.  In either of these views, the claim of Wright would be

barred by the Statute of Limitations, and the possession of the parties, under whom the plaintiff's lessor claimed, was sufficient to carry the title, and, therefore, the admission of the deed and power of attorney was immaterial.

But after so great a lapse of time since the deed purporting to be made under the power of attorney, and the long-continued possession adverse to the title of Wright, and without claim on his behalf, the deed and power of attorney were competent evidence to go to the jury, under these circumstances, and from which they might infer that the deed was duly executed by the authority of Wright.

We think, therefore, that the deed and power of attorney were properly permitted to go to the jury.

Again. The lessor of the plaintiff claimed title under a judgment against one Rutherford, in favor of Lucas and Eskridge, rendered in the year 1833. It appears that Rutherford died after the rendition of the judgment; and that in the year 1843, it was revived by *scire facias* against the heirs and terre-tenants of Rutherford, in the names of Lucas and Eskridge, plaintiffs, who were both dead at the time of the judgment of revival; and thereafter that an execution issued upon the revived judgment under which the plaintiff's lessor purchased. It is now insisted that the judgment on the *scire facias* was void, as the plaintiffs therein were both dead; and, therefore, that nothing passed by the sale under the execution.

This view is founded on the idea that the validity of the execution and the efficacy of the sale under it, depend entirely upon the judgment of revival and the condition of the parties at that time.

But this position is not tenable. The essential thing was the original judgment, the regularity of which is not questioned. The *scire facias* related back to that judgment, and its office was *to have execution* of that judgment, and not to obtain a new and substantive judgment. It was necessary, in order to conclude the rights of parties whose interests might be involved in the execution of the original judgment in consequence of the death of the defendant; and the judgment upon it was an award of execution of the original judgment, and not a new judgment *in numero*. *Locke* v. *Brady*, 30 Miss. 21; *Vick* v. *Chewning*, 31 Miss. 201.

But it is well settled in this court, that a sale of land under execution issued and tested after the death of *the defendant* in the judgment, and without revival by *scire facias*, is not void, but merely voidable; and that a sale under it is valid until regularly set aside in a direct proceeding for that purpose by the heir or terre-tenant. *Shelton's lessee* v. *Hamilton*, 23 Miss. 496; *Hodge* v. *Mitchell*, 27 Miss. 560. And *a fortiori*, a sale made under an execution, in which *the plaintiff* was dead at the time it was issued or tested, could only be voidable; because the reason for a revival applies with much less force to a plaintiff than to a defendant. The reason for a *scire facias* against the heir or terre-tenant of the defendant is, that they may not be concluded of their rights in the property affected by the judgment, without an opportunity to show that the judgment has been satisfied, or otherwise that it should not be enforced. But no such reason exists with reference to the plaintiff, and the revival as to him is merely a technical form, involving no substantial right as between the parties to the judgment, and for the want of which the defendant would have no right to complain that his property was sold under execution upon the judgment. Much less would strangers be permitted to avail themselves of the informality in a collateral proceeding.

Conceding, then, that the revival upon the *scire facias* was irregular, or even void, the substantial thing done in the sale was the execution of the original judgment; and as that would have been valid, when collaterally questioned, without a *scire facias*, it is manifest that it must be valid when the proceedings upon the *scire facias* are irregular, or void, as if they had never been had.

The last ground of error alleged, is that, as the defendant below did not confess *ouster* in his plea, it was necessary that proof of *ouster* should have been adduced, and for the want of such proof, that the judgment was erroneous.

It is admitted that the usual consent rule of lease, entry, and *ouster* appears by the record to have been entered into. But it is said that this was an unauthorized act of the clerk, who was interested in the suit. We cannot notice any suggestion of this kind; but must consider the case by what appears of record.

The record shows that the defendant appeared and entered into the usual consent rule. This must be taken, for the purposes of

this case, to have been done in open court, and that the entry of the fact was made by the clerk under the direction of the court. It was an ordinary step in such a case, not necessarily requiring to be drawn up in writing and signed by the defendant's attorney, or even usually so done. If the act was done in court, it was proper that the court should direct it to be entered of record; and, it being so entered, it must be presumed that the fact took place as recorded, and that it was done and entered of record under the direction of the court. *Gwin* v. *Williams*, 27 Miss. 324.

We think that there is no error in the record to the prejudice of the plaintiff in error; and the judgment is, therefore, affirmed.

NOTE.—On the subject of sales without revivor, see *Harper* v. *Hill*, 35 Miss. R. 63.