42 469
t140 ²253

## Ex rel. Isaac N. Jenness v. The Circuit Judge for Lapeer County.

*Irregularity in legal proceedings—Revivor.* ·

An irregularity is such a defect in legal proceedings as may be waived; a nullity is one that cannot.

The omission of plaintiff's administrators to revive a suit before taking out an execution after his death, is only an irregularity and may be cured by an order *nunc pro tunc.*

Mandamus. Submitted Jan. 6. Granted Jan. 20.

*H. Geer* for the writ.

*S. B. Gaskill* against.

Graves, J. June 1st, 1874, one James Turrill recovered judgment in the circuit court for Lapeer county against Oscar A. Williams for $454.10 damages and costs. July 31, 1876, the plaintiff Turrill died intestate, the judgment remaining in full force and unpaid. September 4, 1876, George N. Turrill and Ward H. Jennings were appointed administrators of the estate of the deceased plaintiff, and immediately entered upon the duties of their trust.

July 19th, 1877, the administrators caused an execution in the usual form to be issued on the judgment, and on the 23d of the same month the sheriff levied on the interest of the judgment defendant in a large quantity of lumber lying in a mill yard. The lumber was sup-

posed to belong to him and two others as tenants in common, and his undivided interest was understood as being one-quarter.

After the usual notice the sheriff sold the interest of the debtor, whatever it was, to the relator, who immediately paid his bid to the sheriff, and the latter made due return thereof to the court.

The sale was made on the 23d of August, 1877. The relator, being unable to come to an agreement with the other two owners for a division of the interests, proceeded on October 30, 1877, to file a bill for a receiver and for a sale by him of the whole lumber, and a division of the proceeds according to the rights of the parties. The case was put at issue in the early part of December of the same year, and under and pursuant to a stipulation made in the cause the relator adduced and closed his proofs, and thereupon the case was postponed to enable the defendants to submit their evidence but no time was fixed therefor.

In this state of the case in equity, and on the 28th of April, 1879, Oscar A. Williams, the judgment debtor, moved the court in the case at law to set aside the execution and proceedings had under it as being void for the reason that it was taken out after the plaintiff's death and without steps to revive.

The circuit judge granted the motion, and a mandamus is now applied for to remove that order.

It is of course conceded that if the execution and sale were void, the order objected to cannot be disturbed. And it is not denied by relator that the proceeding was irregular in consequence of the neglect to revive. But he contends that the defect went no further, and did not make what was done absolutely null, and that proceedings *nunc pro tunc* are admissible to cure what is amiss, and that the case presents strong equities for the relief.

Upon the question whether the execution and sale

were void or merely voidable, the authorities elsewhere do not afford any very clear or very satisfactory light. For the most part, the decisions seen to have been governed, or at least much influenced by local practice or regulations, rather than by any general or leading principle. We must consider the point as a domestic question and depending on the facts and our own practice.

It has been laid down that an irregularity is either the omitting to do something necessary for the due and orderly conducting of a legal proceeding, or doing it in an unseasonable time or improper manner. Tidd's Prac., 512. Another author observes that in its most general sense an irregularity is the technical term for every defect in practical proceedings or the mode of conducting an action or defense as distinguished from faults in pleadings, and that a nullity is the highest degree of an irregularity, in the most extensive sense of that term, and is such a defect as renders the proceeding in which it occurs totally null and void, of no avail or effect whatever, and incapable of being made so; and that it may perhaps be defined as a proceeding that is taken without any foundation for it, or that is essentially defective, or that is expressly declared to be a nullity by statute. And he proceeds to add that it may be laid down as a certain rule that whenever there is any doubt upon the matter, it will always be safe to treat the defect as an irregularity rather than as a nullity, and that there is a tendency in the judges to consider defects merely as irregularities. He also says that an irregularity may be waived, whilst a nullity never can be. McNamara on Nullities, 2, 3, 6. In *Holmes v. Russel,* 9 Dowl., 487, Mr. Justice Coleridge said: "It is difficult sometimes to distinguish between an irregularity and a nullity; but I think the safest rule to determine what is an irregularity and what is a nullity, is to see whether a party can waive the objection. If he can waive it, it amounts to an irregularity; if he cannot, it is a nullity."

There can be no doubt, I think, that the defect in

question was an irregularity within the definition of Tidd; and the other authorities, I conceive, show it to have been nothing more. Had the execution defendant filed a stipulation by which he expressly assumed to waive the omission complained of, we cannot admit that any ground of error would have remained. And if it was competent to waive the defect by any method, the proceeding was not a nullity.

The execution was demandable as matter of right. If regularly applied for it could not be refused. And those who applied were the proper applicants in fact. All that was lacking was a formal proceeding. There was nothing on the face of the papers or in the record to apprise the clerk or sheriff that there existed any impediment in the way. Neither was there anything to warn the relator of any defects in the proceedings.

There was no fraud or inequitable conduct. The sale was fair, and the relator purchased in good faith and paid his bid to the sheriff and the latter returned it into court, and it is to be presumed that it was paid over to the plaintiff's representatives and placed where relator cannot recall it,—at least without trouble and expense. The judgment debtor received the benefit of it. Had he voluntarily paid the amount to the representatives of the deceased plaintiff without any revivor of the judgment, the transaction would have been valid. He did not pay, but allowed execution to be issued and the subsequent proceedings to be taken without objection or raising any question. Not only so; he abstained from moving until the judgment was apparently satisfied, and the relator's position so altered that the objection, if successful, must necessarily cause the latter serious loss.

Moreover, the position taken implies that both the relator and the sheriff were trespassers and liable for damages as wrong-doers. It would be very unreasonable to wink at such consequences. Nothing more was required to preface the issuing of the execution than an order to revive upon affidavit and notice (Circuit Court

Rule 100), and the case shows that such an order would have been a matter of right.

The neglect to obtain it under the circumstances was, we think, a mere irregularity, and which may be cured by an order *nunc pro tunc. Cumber v. Wane,* Strange, 426; *Tapley v. Goodsell,* 122 Mass., 176.

The mandamus should be allowed.

The other Justices concurred.