### FRIYER *v.* McNAUGHTON.

1. EXECUTION—ABANDONMENT OF LEVY—SECOND WRIT.

A levy under execution which is within 2 How. Stat. § 7685, forbidding the sale on execution of a growing crop until it ripens, and extending the life of the execution until such time, is not abandoned by the mere delivery of the writ, indorsed with the levy by the officer, to the justice who issued it, and the issuance of a second execution; especially where the acts attending the issuance of the second writ show an intention to retain the benefits of the original levy.

2. SAME—GROWING CROPS—NOTICE OF LEVY.

The further provision of said section that the officer making such levy shall file a notice thereof in the office of the clerk of the township where such crops are at the time of the levy, and that such notice shall be constructive evidence of the interest of the plaintiff in the execution, is for the benefit of third persons, and a failure to file such notice does not, as between the parties, operate to limit the life of the execution to the return day thereof.

3. SAME—VALIDITY OF SECOND WRIT.

A second execution cannot issue where there is an existing levy undischarged.

4. SAME—AUTHORITY OF JUSTICE OF THE PEACE.

Under 2 How. Stat. § 6975, a justice of the peace has no authority to issue a second execution until the first writ has been returned unsatisfied, in whole or in part.

Error to Ottawa; Padgham, J. Submitted June 9, 1896. Decided June 30, 1896.

Replevin by Kasper Friyer against Edwin J. Mc-Naughton. From a judgment for plaintiff, defendant brings error. Affirmed.

*Walter I. Lillie* (*Stephen H. Clink*, of counsel), for appellant.

*George A. Farr* (*Gerrit J. Diekema*, of counsel), for appellee.

HOOKER, J.   Mead was the owner of certain personal property, including the horse in question, and some wheat, upon which property he gave a chattel mortgage to Watson.   Subsequently, McNaughton, the defendant, levied an execution upon this and other horses belonging to Mead, and sold them upon the execution.   The property was sold to Mead's wife, who did not pay for it, but mortgaged the property to McNaughton for the price, and took possession.   Watson subsequently took the property by replevin, and, after giving the requisite notice, the property was sold upon the mortgage, being bid in by Watson, who then sold the horse in controversy to Friyer, the plaintiff.   McNaughton took the horse upon his mortgage given by Mrs. Mead, and Friyer replevied it in this action.

. The record raises two important questions:

1. Is the defendant in a situation to deny the validity of Watson's mortgage?

2. Was his levy and sale on execution valid?

If Watson's mortgage was valid, the levy should have been made subject to the mortgage.   The question of the validity of Watson's mortgage could not be raised by Mead were he a party, and this mortgage is equally conclusive against the defendant unless he can show an otherwise valid levy.   This brings us to an investigation of the proceedings upon the execution.

On December 5, 1891, an execution was issued by a justice of the peace upon a judgment for $113 and costs against Mead, and in favor of McNaughton, returnable in 60 days.   The justice's docket shows the following entry:

"February 5, 1892.
" Execution returned with the following indorsement: 'December 5, 1891. Levied on section 22, town 8, range 14 west, north ½ of southwest ¼, 5 acres of wheat joining Daniel W. Scott on the west, 5 acres of wheat joining railroad on north side, on the farm occupied by George Mead; also levied on 470 stacks of corn and 47 bunches of corn stalks, a share of which belongs to

George Mead, being on the place known as the "Washburn Farm," in township of Wright.

"'PAUL R. AVERILL,
"'Deputy Sheriff.

"'The above corn and stalks replevied as the property of the Lawton estate. Replevin returned, and property found to be in the Lawton estate.

"'PAUL R. AVERILL,
"'Deputy Sheriff.'·

"JOHN V. B. GOODRICH,
"Justice of the Peace.

"March 10, 1892. Second execution issued at the request of James Cilley, Esq., plaintiff's attorney, returnable in 60 days.

"JOHN V. B. GOODRICH,
"Justice of the Peace."

This alleged indorsement is an exact copy of the writing, and all of the writing, upon the execution. On March 10th another execution was issued. There was nothing on its face to show that it was an *alias*, or that it was not the first execution issued upon the judgment, but the same deputy sheriff who had the first execution wrote upon it the following:

"*Alias* Execution. The following indorsement on execution No. 1."

Here followed, under date of December 5, 1891, an exact copy of the indorsement upon the former execution. Underneath this was the recital of a levy upon six horses under date of March 12, 1892, and the selection of two by Mead as exempt, and the subsequent sale of the other four, for $110, to Mrs. Mead.

It must now be determined which of the two executions was in force at the time of the levy upon the horses. Had the first been returned *nulla bona*, there would have been no obstacle to the second; and possibly, had it been indorsed with a return that clearly showed a release of the levy upon the grain, the same would be true. But it was not. In fact, there was no written evidence showing an intention to abandon the levy or to surrender the exe-

cution; and, if it is to be treated as abandoned, it must be by reason of the officer's delivery of the writ to the justice, and the subsequent issue of a second execution.

2 How. Stat. § 7685, points out the practice where growing crops are levied upon. We attach no importance to the failure to file notice of the levy, as that is a provision for the benefit of third parties. The statute, however, prohibits sale until the crop ripens, and extends the life of the execution until such time. The officer, having levied, may, perhaps, abandon his levy; but it may be doubted if a mere delivery to the justice of the execution, with the levy indorsed, is such abandonment. If the case were in a court of record, we have little doubt that a writ of *venditione exponas* would issue, upon application of the plaintiff, requiring the officer to proceed with the sale, under such circumstances as these; and we see nothing to forbid the officer making such sale in this case, and indorsing a final return later, though the execution was in the hands of the justice.

The fact that a second execution is taken out is not conclusive evidence of an abandonment, and, where the first is not returned before the second issues, it has been said "to indicate mistaken zeal in attempting to obtain satisfaction, rather more than a desire to permit the first writ to become dormant, or to abandon any advantage gained by it." *West* v. *St. John*, 63 Iowa, 287; *Menge* v. *Wiley*, 100 Pa. St. 617. It is undeniable, however, that the issue of a second execution may be evidence tending to show an abandonment, but it is not usually conclusive (though it has been held so in *Scott* v. *Hill*, 2 Murph. 143); but it is not indisputable evidence of abandonment, and may be overcome by testimony showing the contrary. *Alley* v. *Carroll*, 3 Sneed, 110; *Dawson* v. *Daniel*, 2 Flip. 309. As stated in the latter case:

"To constitute an abandonment of a right secured, there must be a clear, unequivocal, and decisive act of the party,—an act done which shows a determination in the

individual not to have a benefit which is designed for him."

In the case before us, the acts attending the issue of the second writ show an intention to retain the benefit of the original levy, and at the same time get the benefit of a new levy, upon other property, which probably could not have been made under the first execution after the return day. But, if the original levy was still valid, the second writ was void, by reason of the rule that a second execution cannot issue where there is an existing levy undischarged. In 1 Freeman on Executions (section 49), this doctrine is enunciated, and authorities cited. The author says, in section 50:

"If a writ has been issued, and its execution commenced, it must first be completed before a new writ can issue. This rule applies equally whether the old writ has been returned or not."

But, further, the only authority of a justice of the peace to issue executions is statutory. Section 6975, 2 How. Stat., authorizes a further execution when the first is returned unsatisfied, in whole or in part. See *Bigalow* v. *Barre*, 30 Mich. 1. The first was not returned unsatisfied in whole or in part, and there was no authority for the issue of the second writ, and all proceedings under it were therefore void. This leaves the defendant with no foundation for his claim of title or possession.

It is unnecessary to discuss the numerous other questions raised.

The judgment is affirmed.

Long, C. J., Montgomery and Moore, JJ., concurred. Grant, J., did not sit.