L. H. DUNHAM, J. L. SLOAN, and MARY B. DUNHAM, Appellants, v. ALBERT BENTLEY, Defendant, and J. L. STAMAN, Administrator, Garnishee, PHILOMA BENTLEY AND MURRAY & FARR, Interveners.

**Husband and Wife:** CONVERSION: *Creditors.* While money given by a wife to her husband, without promise of repayment, will not enable her to base a claim against his creditors, this rule has no application to cases where her rights against the husband might be enforced by suit under section 2204, Code, 1873, and hence a settlement in which the wife takes an assignment of a note on account of her property which her husband has *converted,* is valid against his creditors.

**Attorney's Fees:** ORDER OF COURT. A son contracted that his attorneys should have twenty per cent. of his share of his father's estate, for services rendered in proceedings brought to appoint a guardian for his father, on account of insanity. At the end of the controversy the court ordered payment to said attorneys of a certain sum out of the father's estate, with proviso that it should be in full compensation for all services rendered, and the attorneys accepted said sum under protest. *Held,* they could claim nothing under the son's contract, as it would be presumed that they had received full compensation.

**CHAMPERTY:** *Fraud.* An agreement by one to whom her husband has assigned his interest in his father's estate, to pay attorneys a specified per cent. of the claim for protecting her interest as against the creditors of her husband, is valid if the assignment was valid.

**Contingent Interest Sale:** RATIFICATION. Though an assignment of a son's prospective interest in a father's estate is invalid, yet it may become operative by a ratification after the father's death.

**Executions:** REVIVOR. An execution issued in the name of a deceased plaintiff is absolutely void where there is no indorsement thereon of the name of his representatives, as required by Code 1873, section 3130.

ABANDONMENT. The issuance of a void execution does not operate as an abandonment of a prior execution.

RETURN. The return of an execution does not, under Code 1873, section 3052, affect garnishment proceedings commenced after the issuance of the execution.

*Appeal from Jackson District Court.*—HON. WILLIAM
F. BRANNAN, Judge.

MONDAY, OCTOBER 11, 1897.

IN 1886, L. B. Dunham obtained a judgment against
Albert Bentley for nine hundred and sixty-seven dollars
and forty-two cents. The judgment plaintiff died in
1892, and, on August 19, 1893, execution was issued on
this judgment in the name of L. H. Dunham, as admin-
istrator of L. B. Dunham, deceased, on which appeared,
in the handwriting of the clerk, the indorsement: "L.
H. Dunham appointed administrator of the estate of
L. B. Dunham, and his commission as such is still in
force." J. L. Staman, as administrator of David Bent-
ley, deceased, and others, were duly garnished, and the
execution returned by the sheriff October 4, 1893. A
new execution in the name of L. B. Dunham, without
any indorsement, was issued April 23, 1894, and Staman
again garnished. December 8 following, Staman
answered that, as administrator of the estate of David
Bentley, he then held the sum of eight hundred and
twenty-five dollars as Albert Bentley's share of his
father's estate, and that this was claimed by Philoma
Bentley and Murray & Farr. Thereafter such claimants
filed a petition of intervention, setting up an assign-
ment of Albert Bentley's share in his father's estate,
made January 28, 1893, and ratified shortly after the
death of David B. Bentley. L. H. Dunham, J. L. Sloan,
and Mary B. Dunham, as heirs and persons entitled to
the estate of L. B. Dunham, deceased, attack the assign-
ment as being fraudulent and without consideration.
Trial to court, judgment for interveners, and L. H. Dun-
ham, J. L. Sloan, and Mary B. Dunham appeal.—
*Reversed.*

*Levi Keck* and *D. A. Wynkoop* for appellants.

*Hayes & Schuyler*, *Wm. Graham*, and *Murray & Farr* for appellees.

LADD, J.—The judgment plaintiff died before the second execution was issued. No indorsement whatever was made by the clerk, as required by section 3130 of the Code of 1873, and the defendant has entered no complaint of this omission, though, under section 3134, he might have enjoined or moved to quash the execution. The record, then, raises the question whether an execution without indorsement, issued after the death of the judgment plaintiff, is void, or only voidable. A judgment, at common law, became dormant in a year and a day, but it might be revived by resort to the *scire facias*. An execution issued after the lapse of this time, and without so doing, was only voidable. If the defendant chose to interpose no objection to its regularity, others could not do so for him, and he was not permitted to do so collaterally. Freeman, Executions, section 29. Where the time within which execution may be issued has been extended by statute, the same rule is adopted. *Mariner v. Coon*, 16 Wis. 468; *Bank v. Spencer*, 18 N. Y. 154. So, too, where the time within which an execution may issue after a previous one, is limited, an execution issued therefor, without revivor has been adjudged voidable only. *Gardner v. Railway Co.*, 102 Ala. 635 (48 Am. St. 84, 15 South. Rep. 271); *Eddy v. Coldwell*, 23 Or. 163 (37 Am. St. 672, 31 Pac. Rep. 475.) In analogy with the principle involved in these cases some courts have held an execution issued after the judgment creditor's death, and without revivor, not void. *Day v. Sharp*, 34 Am. Dec. 509; *Hughes v. Wilkinson*, 37 Miss. 482; *Darlington v. Speakman*, 9 Watts & S. 182; *Jenness v. Lapeer*, 42 Mich. 469 (4 N. W. Rep. 220). With

better reason such an execution has been adjudged void
on two grounds: (1) By the death of plaintiff, the party
to whom authority was given to enforce the judgment
is withdrawn; (2) a new party, benefited and concerned
in the judgment, is introduced in the record. *Brown v.
Parker*, 15 Ill. 307; *Meyer v. Mintonye*, 106 Ill. 414; *Bel-
linger v. Ford*, 21 Barb. 311; *Morgan v. Taylor*, 38 N. J.
Law, 317; *Stewart v. Nuckols*, 50 Am. Dec. 127. This
last case overrules *Day v. Sharp*, *supra*. The grounds
for holding such an execution void seem unassailable.
If the sole plaintiff is dead, the right of another to stand
in his stead ought to be first determined, and the record
show in whose behalf the benefits accruing under the
judgment are taken. This insures the proper applica-
tion of the amount collected to the satisfaction of the
debt. It avoids an unexplained variance in the record.
That letters of administration have issued is not pre-
sumed, and the authority given plaintiff to resort to the
legal processes of compulsory payment ought not to be
exercised by another until his rights to do so be fully
ascertained. Such a rule serves a double purpose; it
guards the rights of the judgment defendant, and pro-
tects the property of the deceased plaintiff. The provis-
ions of the statute recognize, rather than obviate, the
necessity of some kind of a revivor. Upon the filing of an
affidavit with the clerk of court, setting forth the death
of the plaintiff, the names of his heirs or representatives,
and, if the latter, accompanied by a certificate of qualifi-
cation, he is required to indorse on the execution the fact
of such death, and the names of those entitled to the
judgment; and when this is done the sheriff proceeds as
though the parties whose names are so indorsed were
the only plaintiffs. Sections 3131-3133, Code 1873. If
the personal representatives or heirs are not properly
stated in the indorsement, the execution may be
quashed; and, if not entitled to the judgment, its
enforcement may be enjoined. Section 3134. A remedy

is thus provided where there is a defective indorsement; none, in event of no indorsement. Nor, in such a case, was any necessary, as the execution, being void, would be no protection in the hands of the officer, and a levy thereunder amount to no more than a trespass. This view is in harmony with the conclusion arrived at in *Meek v. Bunker*, 33 Iowa, 169, where it is said of such an execution that it "could not have vitality to sustain a levy," and that, "being invalid, the property levied upon under it could not be held." See *White v. Secor*, 58 Iowa, 533. It follows that the execution was void, and the garnishee not held thereunder.

II. The issuance of the second execution, as it was void, did not amount to an abandonment of the first one. *West v. St. John*, 63 Iowa, 287; *Friyer v. Mc-Naughton*, 67 N. W. Rep. 978 (Mich.). Nor did the return of the first execution in any way affect the garnishment proceedings. Section 3052, Code 1873. The proceeds thereof may be readily appropriated, under the order of the court, to the satisfaction of the judgment, without the use of the original execution. No question is made as to the sufficiency of the indorsement on the first execution, and any property held by Staman, as administrator of David Bentley, deceased, belonging to the defendant Albert Bentley, must be accounted for thereunder.

III. The assignment by the defendant of his prospective share in his father's estate to Philoma Bentley and Murray & Farr prior to his father's death was fully ratified after that event, so that the policy of permitting transfers of contingent interests of this character need not be considered. But the plaintiffs contend that there was no consideration for the assignment to Philoma Bentley. The evidence,

when fairly considered, quite satisfactorily shows that she received one thousand dollars from her father's estate, and afterwards loaned it to Morris & Griffin, taking their note therefor; and that she received a note of five hundred dollars from the estate of her mother. These notes were collected by her husband, the defendant, in 1883, and the proceeds appropriated by him to his own use. With six per cent. interest, the sums so appropriated, together with forty-five dollars loaned to him, amounted to something over two thousand dollars in 1886, and for this amount he then executed his promissory note, which is the consideration of the assignment. It will thus be seen that the facts in this case do not bring it within the rule that a gift of money or property by the wife to the husband without any promise to return or repay as a consideration will not sustain a subsequent transfer of property by the husband to her when attacked by creditors. *Hanson v. Manley*, 72 Iowa, 51; *Porter v. Globe*, 88 Iowa, 565. Here the wife did not give or loan money to her husband. He simply took the notes, collected them, and appropriated the proceeds to his own use. He was under the same obligation to account to his wife for this misappropriated money as he would have been in case of a stranger. Section 2204 of the Code of 1873 provides that when either husband or wife obtains possession or control of property belonging to the other, the owner of such property may maintain an action therefor. If Mrs. Bentley could maintain an action for this money, as she surely had the right to do under this section, then certainly she could settle the claim by taking the note. But it is insisted that she was never the owner of the note. It was executed at a late hour of the night, and at the time of several other transactions, and was handed to her the next day. She then indorsed it to Hosea Goodenow, to

whom her husband had transferred substantially all his property. The purpose seems to have been that any surplus remaining after satisfying the indebtedness due Goodenow be applied on her note. Goodenow sent the note back to Mrs. Bentley through his son. We think the evidence warrants the conclusion that the note remained the property of Mrs. Bentley, and was only indorsed to Goodenow for the purpose above stated.

IV. A contract was entered into between Mrs. Bentley and Murray & Farr, by the terms of which the firm was to receive thirty per centum of the money in the hands of the administrator, for their services in protecting Mrs. Bentley's interest in such property against the suit of Dunham and other creditors of defendant, and for collecting the same. This contract, it is said, is void, because its purpose was to aid the assignee in defeating the defendant's creditors. Such an agreement, when carried out, and made effective, may have that result, because inevitable in protecting the *bona fide* rights of the purchaser. If there was a fraudulent purpose in the original transfer of the property, neither the purchaser nor the contingent interest of the attorney will be protected. But, if this property belonged to Mrs. Bentley, then she had the right, under the decisions of this court, to contract payment of a portion of the property recovered for the services of her attorneys in protecting it. *Winslow v. Railway Co.*, 71 Iowa, 197; *Jewel v. Neidy*, 61 Iowa, 299; *McDonald v. Railway Co.*, 29 Iowa, 170.

V. Under the assignment of the defendant, Murray & Farr were to receive twenty per centum of the net share of the defendant in his father's estate, for services by them rendered as attorneys in first resisting the appointment of a guardian for his father, and after-

wards procuring the appointment thereof because of insanity. At the end of that controversy the attorneys engaged therein filed a stipulation that each firm receive out of the estate, for services, the sum of one hundred and fifty dollars. The court ordered the payment of this amount, but provided that it should be in full compensation for all services rendered. This condition in the record entry was known to Murray & Farr, and, though they protested, they received the money. On what ground the protest was based we can only surmise, as it does not appear in the record. We conclude that it must have been owing to the fact that this condition was not contained in the stipulation. That the court was authorized to fix the fees for the services rendered is not questioned, nor could it be after receiving the payment provided. The firm had the option of taking or refusing this money, but, having taken it, they are not in a situation to object to the condition on which it was paid. If the order was erroneous, it might have been modified or corrected. The value of the services rendered does not appear, and, in the absence of evidence, it will be presumed the compensation allowed by the court was entirely adequate. Having received payment in full from the guardian of David Bentley, whose estate was primarily liable for such services, compensation cannot be exacted a second time from Albert Bentley, or his property. Nor will the assignee be permitted to accomplish indirectly that which could not have been done in direct action. The consideration for the assignment having been fully discharged, it cannot be insisted on as against Albert Bentley nor his creditors, who are permitted to avail themselves of every defense he might urge. The twenty per centum of his inheritance remained his property, and should be applied in satisfaction of the judgment.— REVERSED.