W. H. JONES, Appellant, v. AMERICAN HOME FINDING ASSOCIATION, Appellee.

**CONTRACTS: Construction—Commission on Subscription.** A contract under which a soliciting agent for a charitable association was to receive a commission on "all money secured by his personal solicitations and paid to him by individuals and counties" contemplates (1) moneys actually collected by the agent, and (2) enforcible obligations secured by him.

**CONTRACTS: Validity—Public Policy—Commission on Charitable Funds.** A contract under which an association devoted exclusively to charitable and benevolent purposes, whose existence is made possible by subscriptions and donations for said purposes, agrees to pay a soliciting agent "one half of all money secured by his personal solicitations and paid to him by individuals and counties," is against public policy.

*Appeal from Wapello District Court.*—F. M. HUNTER, Judge.

APRIL 5, 1921.

ACTION at law to recover an alleged commission for services by plaintiff under a written contract with defendant. Directed verdict for defendant, and judgment entered against plaintiff for costs. Plaintiff appeals.—*Affirmed.*

*W. W. Epps,* for appellant.

*Roberts & Webber,* for appellee.

DE GRAFF, J.—Plaintiff was a field agent for the defendant association. Under the terms of a written contract, he was employed by the defendant to perform certain services in connection with its charitable work, and, among other things, to secure life memberships, disseminate its literature, and solicit funds for the prosecution of the objects and purposes of said association. In consideration of the services performed on the part of plaintiff, it was agreed that:

"W. H. Jones shall receive as a compensation  *  *  * one half of all money secured by his personal solicitations and paid to him by individuals and counties."

It is alleged by plaintiff that, under and by virtue of said contract, and while in the line of his duty, he solicited one Emanuel Zaring, of Washington, Iowa, for a subscription to said defendant association, and did procure from him a gift of $1,000, to be made in the form of a legacy in the will of said Zaring; that there was paid to the said defendant association from the estate of the said Zaring the sum of $1,000 under his will; that the said association has failed and refused to pay the plaintiff one half of the bequest so made, or the sum of $500.

At the close of plaintiff's testimony, upon motion of the defendant, the court directed the jury to return a verdict in favor of the defendant, and verdict and judgment were entered accordingly. The answer to either one of two questions determines the correctness of the ruling of the trial court: (1) Did the plaintiff make a prima-facie case on the evidence offered in support of his petition? (2) Is the contract, so far as it relates to the alleged commission, contrary to public policy?

I.  A reading of the record convinces us that the evidence is insufficient to sustain the allegations of plaintiff's petition; and, in passing, it may be said that the contract had in contemplation moneys actually collected by the plaintiff, and also such contracts secured through the agency of plaintiff as were enforcible obligations, in the form of subscriptions to the defendant association. Furthermore, there is no competent evidence tending to show that the said bequest was secured by and through the personal solicitation of this plaintiff, conceding, for the moment, that the bequest comes within the purview of the contract.

1. CONTRACTS: construction: commission on subscription.

No purpose will be served in reciting the evidence upon which plaintiff predicates a recovery. Sufficient to state our conclusion that it does not justify a recovery.

II.    It is a well-settled principle of the law that, if a contract binds the maker to do something opposed to the public policy of the state, or conflicts with the wants, interests, or prevailing sentiment of the people, or his obligations to the world, it is void. The term "public policy" is not susceptible of exact definition. If a contract is opposed to the interests of the public, even though the intent of the parties is good, and no particular injury to the public would result in the particular case, a court will hold that it contravenes public policy. The test is the evil tendency of the contract, and not its actual injury to the public in a particular instance.

2. Contracts: validity: public policy: commission on charitable funds.

The principal business of the defendant association is looking after and providing homes for neglected, dependent, and homeless children. Its existence is made possible by subscriptions and donations of benevolent and charitably inclined persons.

Having in mind the character of the defendant association, its objects and purposes, and the facts and circumstances surrounding the contracting parties at the time, was the contract in relation to the commission claimed by plaintiff contrary to public policy?

The legacy was paid directly to the defendant association by the executor of the Zaring estate. The intent of the testator did not contemplate that the plaintiff should share in the bequest. A court would do violence to the declared intent of a testator to permit a diversion or a conversion of a bequest made under such circumstances. The plaintiff had nothing to do with the making or the probating of the will, nor was he in a position to enforce a provision that inured to the benefit of the defendant association. He was "a stranger," and the legatee was under no obligation "to take him in." We cannot assume that the testator, Zaring, gave the defendant association a gift by will of $1,000 for the reason that he desired to help plaintiff secure a commission thereon. The practical construction of this contract does not support such a conclusion. It is not shown that Zaring

knew the terms of the contract between plaintiff and the association.

The officers of the defendant association have no authority to contract in relation to funds coming into their possession to carry out the purposes of the corporation, whereby private persons would reap the benefits of bequests, as in the instant case. It would be an unwarranted diversion of such funds, which would tend to shock the public conscience. A charitable institution must remain true to the purposes of its creation. Trust funds are in its hands, and it is not permitted to divert those funds for private gain on its own behalf or on behalf of those who are in its employ. Public policy does not permit this.

For the reasons stated, the judgment entered by the trial court must be, and it is,—*Affirmed.*

EVANS, C. J., WEAVER and PRESTON, JJ., concur.