[Civ. No. 16202. First Dist., Div. Two. Mar. 23, 1955.]

J. THADDEUS CLINE, Respondent, v. WILLIAM ZAPPETTINI, Appellant.

Tobias J. Bricca, Duff & Ferdon and William L. Ferdon for Appellant.

J. Thaddeus Cline, in pro. per., Angell & Adams, Philip H. Angell and Robert M. Adams, Jr., for Respondent.

NOURSE, P. J.—Plaintiff, an attorney, brought an action for declaratory relief seeking a determination of his rights under a contingent fee employment contract. At issue was whether he was entitled to $3,750 or $7,041.66 for services rendered. The trial court, sitting without a jury, awarded plaintiff the larger sum and defendant Zappettini appeals from the judgment.

Defendant-appellant is a wholesale florist and has been in business in San Francisco since 1925. He first came to see plaintiff-respondent on March 21, 1952. At that time he stated in substance that he had "gotten himself into a mess." He told respondent that he had signed an exchange agreement to exchange a piece of real property owned by him and located in Mountain View for a piece of realty located in Redwood City. He claimed that he had revoked the agreement, but that Mr. Romano, the real estate broker, was pressing him for payment of his fee. Romano was claiming that the exchange agreement had been consummated to the extent that it was signed and therefore he was entitled to a broker's fee. A day or two before this he had gone to appellant's office and definitely threatened to sue.

Appellant and respondent met next in respondent's office on March 25, at which time the latter was doubtful of getting appellant out of his predicament. However further efforts disclosed the fact that the bank which was to loan a certain sum of money at a certain rate of interest according to the signed exchange agreement would not negotiate and complete the loan at those terms.

They met again in respondent's office on March 27 and respondent informed appellant that Mr. Stulsaft, president of the Land Development and Investment Company (hereinafter referred to as Land Development Company) the other party to the exchange agreement, refused to comment as to his projected action. In view of the various uncertainties, respondent suggested that the depositions of Romano and Stulsaft be taken in the hope of better ascertaining appellant's legal position.

Respondent proposed to handle the defense against the

claim of Romano on the basis of one-third of whatever appellant saved. Specifically, he suggested that if the case was settled within one week before the first date the case is set for trial or if it went to judgment, he would receive one-third of the brokerage fee. If it was settled before that time, he would handle the matter for 25 per cent of the brokerage fee saved. If appellant decided to abide by the exchange agreement, respondent would charge a reasonable fee, not to exceed $500.

In a letter dated April 1, 1952, respondent set forth the above terms and one other possibility not discussed orally. That latter possibility would be where the Land Development Company sued or if Romano sued not only for the brokerage fee promised by appellant but also the one promised by the Land Development Company. This amounted to $21,125 and respondent suggested that in such a case his fee be based on that larger amount. If the settlement was made prior to one week before the first trial date the fee would be 25 per cent; if the action was terminated by judgment or later settlement, the fee would be 33-1/3 per cent. Finally, if the appellant decided to abide by the agreement, respondent would receive a reasonable attorney's fee not to exceed $1,000.

On April 2 after receiving the letter appellant again conferred with respondent in his office. Appellant did not understand the latter possibility of being sued for double fees because he felt confident that Mr. Stulsaft would not attempt to enforce the agreement. Respondent reminded him, however, that if the transaction would be to Mr. Stulsaft's advantage in the amount of $75,000, it was unrealistic to assume that he would waive his rights under the contract. Furthermore, appellant could not expect respondent to defend him in two actions for the same amount that he would defend against one. The two actions would be a suit for broker's fees and one for specific performance by the Land Development Company. Respondent further testified that appellant's reaction was that if he should be sued in order to force him to go through with the deal he would be happy to pay $7,000 in order to get out of it.

Respondent filed a complaint in declaratory relief against Romano and the Land Development Company on April 3. Romano answered and filed a cross-complaint for $11,000 on April 14. On April 23 the Land Development Company answered and cross-complained for specific performance.

The two met again to discuss the above developments and appellant asked if the fee arrangements previously agreed upon would apply. The two of them went over the letter referred to above and it was definitely stated that if the suit was prosecuted to a successful conclusion, appellant would pay a fee of $7,000.

At the conclusion of this action the trial court decreed that the exchange agreement was of no legal force and effect and that neither Romano nor the Land Development Company were entitled to judgment on their cross-complaints.

Respondent sent his statement for services rendered in the amount of $7,041.66. Appellant sent respondent a check for $3,750 and one for $63.25 accompanied by a letter which stated in part that the checks were ''as per agreement dated April 1, 1952.''

Respondent informed appellant that he would not accept any reduction in his fee, that he was returning the checks and that he was filing a suit for his fee. Appellant acknowledged that he owed the $3,750 and that whatever happened respondent should keep the check. As a result, respondent turned the check over to his secretary for safekeeping. Unknown to respondent, she had the check certified which evidently was customary office practice in such a situation.

Respondent filed this action for declaratory relief on January 23, 1953, and on February 17, 1953, the check was returned to appellant.

█ The law regards the attorney's relationship with his client of the highest fiduciary character and therefore treats contracts between the two for the former's compensation as presumptively invalid with the burden of showing its fairness on the attorney. The attorney must offer clear and satisfactory evidence that the transaction is fair and equitable and that the client was fully informed of all pertinent facts so that he was able to act understandingly with the attorney (*Estate of Witt*, 198 Cal. 407, 419 [245 P. 197] ; *Roberts* v. *Wachter*, 104 Cal.App.2d 271, 278 [231 P.2d 534] ; 6 Cal.Jur. 2d, Attorneys at Law, § 142).

█ Appellant is an experienced successful businessman who has operated his own business for many years. According to respondent's testimony appellant did not completely understand all the alternative courses of action and corresponding fee scales and therefore came in to talk it over. Respondent's explanation when considered with the letter is clear and unambiguous, and it seems unlikely that appellant

as a prosperous businessman did not find it likewise after the conferences. After the conversation of April 2, appellant seemed to understand the various alternatives as pointed out in the letter and agreed to its terms. In fact, he agreed that if he could get out of the deal, he would be happy to pay $7,000. Such evidence if believed seems sufficient to support the finding that appellant was fully informed of all pertinent facts in regard to the contract.

In order to determine whether a contract between attorney and client is fair and equitable, the following factors according to the "Canons of Professional Ethics" of the American Bar Association, are proper to consider:

"(1) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the cause; . . . (3) the customary charges of the Bar for similar services; (4) the amount involved in the controversy and the benefits resulting to the client from the services; (5) the contingency or the certainty of the compensation; . . ." (Canon 12).

The respondent claimed to have done many hours of research work and the trial lasted for five days. The appellant stated that the exchange agreement if carried out would have cost him $75,000. The degree of skill required is difficult to ascertain, but at least it can be said that from appellant's point of view the best possible result obtained. Finally, the amount of the fee was contingent upon the degree of success achieved. All these factors indicate that $7,000 was reasonable for services rendered and the results therefrom.

Appellant's next contention is that the trial court's interpretation actually awards the respondent twice for the same service and is therefore invalid. This argument is based on the fact that a cross-complaint is part of the same action and it is not logical to assume that such an expected move by the parties imposes an additional burden on the attorney.

A cross-complaint is part of the same action, but it does not necessarily follow that appellant in that action was confronted with the same problem of proof against both parties. That is, it is entirely possible that the broker could have done all that was necessary in order to recover his fee under his agreement with appellant but that the exchange agreement would still not be enforceable.

██ Appellant's last major argument is that respondent's action in having the check certified was an accord and satisfaction and therefore bars any additional recovery.

██ "The discharge of a claim by way of accord and satisfaction is dependent upon a contract, express or implied. It follows that the essentials of valid contracts generally must be present in a contract of accord and satisfaction. These are: a proper subject matter; competent parties; consent, or meeting of the minds; and consideration." (1 Cal. Jur.2d, Accord and Satisfaction, § 2.)

██ The parties must agree that the obligation is extinguished or there is no accord. ██ However, if the offer by the debtor is upon condition that the remittance be taken in full payment, and the creditor accepts with knowledge of the condition, there is accord and satisfaction even if the creditor states that he is not accepting the check in full satisfaction. (1 Cal.Jur.2d, *supra*, § 10.)

██ The above rule is evidently what appellant has in mind, but it is not applicable to the facts. Respondent stated that appellant in answer to respondent's telephone demand for the entire fee told him to keep the check because no matter what happened he owed that much. Therefore, no condition of acceptance was attached so that it can be said the debt was extinguished.

██ Essentially this case appears to present a fact question only which the trial court resolved in the attorney's favor. The appellant evidently accepted the offer of respondent as set forth in the letter of April 1 on April 2. According to its terms the fee was to amount to one-third of the broker's fees saved if it was necessary to defend against both parties and the defense was successful.

Judgment affirmed.

Dooling, J., and Kaufman, J., concurred.