Leon **LEIGHTON**, Plaintiff-Appellant and Cross-Appellee,

v.

**NEW YORK, SUSQUEHANNA AND WESTERN RAILROAD COMPANY**, Defendant-Appellee and Cross-Appellant.

Nos. 252, 513, Dockets 71–1506, 72–1008.

United States Court of Appeals, Second Circuit.

Argued Nov. 12, 1971.

Decided Jan. 31, 1972.

Certiorari Denied May 15, 1972. See 92 S.Ct. 1777.

---

See, also, D.C., 306 F.Supp. 513.

Charles L. Sylvester, New York City (Warshaw, Sylvester, Burstein, Franks & Lebow, New York City, on the brief) for plaintiff-appellant.

Roy M. Cohn, New York City (Saxe, Bacon & Bolan, New York City, on the brief) for defendant-appellee.

Before FRIENDLY, Chief Judge, and FEINBERG, Circuit Judge, and DAVIS, Judge.*

FEINBERG, Circuit Judge:

Plaintiff Leon Leighton, a New York attorney, sues in this diversity action to recover the fair and reasonable value of legal services rendered to defendant New York, Susquehanna and Western Railroad Company, a New Jersey railroad corporation. Separate trials on the issues of liability and damages were held in the United States District Court for the Southern District of New York before Morris E. Lasker, J., sitting without a jury. In the first trial, the judge found defendant liable to plaintiff. 303 F.Supp. 599 (1969). In the second, the judge found the value of plaintiff's services on a quantum meruit basis to be $200,000.[1] Defendant appeals from both decisions. Plaintiff appeals from the second, claiming that his services were worth $300,000. We affirm the final judgment of the district court.

The district judge found that after defendant railroad had suffered heavy losses in its passenger operations in the early 1950's, it retained plaintiff "to take action to eliminate or reduce [defendant's] losses by discontinuance of passenger operations." 303 F.Supp. at

---

* Of the United States Court of Claims, sitting by designation.

1. The opinion is unreported.

601. The Resolution of defendant's board of directors regarding plaintiff's compensation, which was drafted by plaintiff, stated:

> Leighton will not claim any compensation in the passenger case unless definite financial benefits are realized by Susquehanna as a result of the proceedings. Leighton shall then receive such compensation commensurate with the benefits realized as shall be fixed by the Executive Committee, whose decision shall be final.

At the time plaintiff was retained, defendant was operating 60 passenger trains on weekdays, 36 on Saturdays and 34 on Sundays and holidays. By May 1959, as a result of proceedings instituted by plaintiff before the New Jersey Board of Public Utility Commissioners, defendant was required to operate only six trains on weekdays and none at other times. From time to time defendant paid plaintiff various amounts as an advance on his retainer. In 1960, a dispute arose over plaintiff's compensation generally; the dispute ended in termination of plaintiff's services in January 1961. By then, plaintiff had been paid $56,500 on account. In the same month, plaintiff requested defendant's executive committee to set the amount of his fee in accordance with the Resolution. No action was taken, and plaintiff instituted this lawsuit in February 1961.[2]

When the first trial finally began in January 1969, defendant argued that the district court should decline to exercise its jurisdiction because the New Jersey courts could best evaluate plaintiff's legal services. The district court properly rejected this novel abstention argument. Defendant also offered a number of defenses to liability, which the district court considered and rejected in a lengthy opinion. Not all are repeated here, and we will confine ourselves to the arguments defendant continues to press before us. Briefly stated, these are: (1) Since the passenger litigation had not yet been concluded when plaintiff asked defendant to fix his fee, no "benefits" could be ascertained and thus defendant's failure to fix the fee was not arbitrary; (2) since plaintiff without cause withdrew from the passenger litigation at a crucial time, he forfeited his fee; (3) once Judge Lasker decided that an additional fee was warranted, rather than fix it himself he should have directed defendant's executive committee to do so, in view of the Resolution.[3]

▮▮▮▮ The first of these arguments is an obvious afterthought. Judge Lasker correctly noted that "if this were actually defendant's position it could have been brought to plaintiff's attention and defendant could have agreed to fix the fee at a later date."[4] The second is also without merit. The judge found that plaintiff's withdrawal from representation of defendant was brought about by defendant's own actions and was for just cause under the applicable Canon, which allows withdrawal for "good cause." This factual finding was hardly clearly erroneous. Defendant's third argument has a superficial appeal because

2. Some three years after suit was brought, the executive committee did adopt the following resolution:

RESOLVED, that it is the decision of this Committee that Leon Leighton has been more than adequately compensated for the legal services for which he is suing, and that this committee recommends no further payment be made to him in relation to such services.

3. Defendant also points out that in December 1965, the executive committee passed another resolution:

RESOLVED, that if the Court decides that the executive committee's opinion was erroneous and that it was or is required to fix Leighton's fee, this executive committee will promptly and in all good faith proceed to do so, and Leighton will be given an opportunity to appear before it and present his case.

4. 303 F.Supp. at 615. The judge also noted that:

[T]he services of Mr. Leighton have long since been concluded and the litigation itself, though concluded after he ceased to represent Susquehanna, was also terminated prior to this trial.

Id. at 616 n. 32.

under the Resolution plaintiff did agree to accept "such compensation . . . as shall be fixed by the Executive Committee, whose decision shall be final." But this called for good faith action by the executive committee. See, *e. g.*, Pillois v. Billingsley, 179 F.2d 205 (2d Cir. 1950). Since Judge Lasker found in the liability trial that defendant failed to meet this obligation, a finding supported by the record, his decision to have the court fix defendant's liability in the first instance was a proper and efficient procedure. In the trial court, defendant also presented a counterclaim based on plaintiff's alleged duty to account for certain legal fees he did receive and on plaintiff's alleged mismanagement of the passenger service litigation. The district court decided against defendant on both issues and we see no error in these determinations.

■ After the second trial, the district court found that "the fair and reasonable value of plaintiff's services is $200,000." Defendant attacks this sum as excessive, arguing that many of plaintiff's billed hours were spent in unrelated or unnecessary activity and that plaintiff himself originally sued for only $200,000. Plaintiff, on the other hand, asserts that the sum is inadequate even if judged on the basis of the court's own factual findings and that the court was inaccurate in certain calculations as well as in its application of legal standards. Despite the variety of arguments, however, we are not persuaded to disturb the district court's conclusion. It seems clear to us that Judge Lasker gave careful consideration to all relevant factors [5] and that the $200,000 amount is supportable both in law and in fact.

Judgment affirmed.

5. The court stated:

In conclusion, bearing in mind the extensive nature of plaintiff's services, the expertise required, the contingent character of the agreement, the standing of plaintiff at the bar, the results achieved by him for his client, the substance of the testimony of all the experts in the case, and a careful study of the trial transcript and the voluminous documentation contained in the record, I find that the fair and reasonable value of plaintiff's services is $200,000.