BROWNING DEBENTURE HOLDERS' COMMITTEE et al., Plaintiffs,

v.

DASA CORPORATION et al., Defendants.

No. 72 Civ. 1332.

United States District Court,
S. D. New York.

May 24, 1978.

On Motion to Amend Caption
Sept. 21, 1978.

Brewer & Soeiro by Bradley R. Brewer, New York City, for plaintiffs Bradley R. Brewer, Roy E. Brewer.

Anderson Russell Kill & Olick, P. C. by Jerold Oshinsky, New York City, for plaintiff Simms C. Browning.

Jacobs Persinger & Parker by I. Michael Bayda, Jeffrey I. Slonim, New York City, for defendant DASA Corporation.

Sullivan & Cromwell by Edward W. Keane, David M. Olasov, New York City, for defendant The Bank of New York.

Breed, Abbott & Morgan by James D. Zirin, H. Barry Vasios, New York City, for defendant Arthur Andersen & Co.

## OPINION AND ORDER

OWEN, District Judge.

The issues in this action having been fully resolved adversely to plaintiffs after trial, 431 F.Supp. 959 (S.D.N.Y.1976) and on appeal, 560 F.2d 1078 (2d Cir. 1977), there is before me on remand from the Court of Appeals the sole remaining matter of the redetermination of attorneys' fees and litigation expenses due defendants, in accordance with the Court's instructions as set forth at 560 F.2d 1078, 1087–89.

The underlying records concerning such fees and expenses were duly before me at the hearing held on November 22, 1976, at which time appropriate witnesses testified and the plaintiffs had full opportunity to, and did, exercise the right of cross-examination. There have been extensive subsequent submissions by all parties to this court upon remand.

 Turning first to the fees to be awarded to The Bank of New York, the award is to be limited to the cost of services and research reasonably required to obtain a dismissal by the Bank at the earliest reasonable time. I do not deem this direction to mean that attorneys for the Bank, while endeavoring to determine the best way out, may not be recompensed pursuant to § 10.11 of the trust indenture,[1] as authorized by § 315(e) of the Trust Indenture Act of 1939, 15 U.S.C. § 77ooo (e), for appropriately dealing with matters that press upon the litigation scene as a case of this type sweeps down the path. An attorney's duty to a client certainly requires the protection of the client's entire interests while procedural steps are being weighed and their timing determined.

From the computer printout based on the underlying time sheets of Sullivan & Cromwell, the Bank's attorneys, it appears that from the filing of the action until its eventual dismissal as to the Bank in May of 1975, the partner in charge, Edward W. Keane, and an experienced associate, David M. Olasov, were carrying the bulk of the defense, and that a total of 226 hours were spent to obtain dismissal. This total includes early efforts to deal with a class action motion and appeal, with a motion for summary judgment by plaintiffs on two counts, and with customary discovery matters, all of which required the not-unreasonable expenditure of 176 hours—by no means an excessive amount of time. While a motion for summary judgment in its favor was considered by the Bank early in the case, it was not made the subject of a motion because of Keane's and Olasov's concern over the legal precedents in this circuit routinely denying summary judgment in the absence of discovery by the plaintiffs. While plaintiffs had indeed in January 1973 obtained a "delay for discovery . . ." 560 F.2d at 1082, 1088, they never undertook it. It is thus noteworthy that from the time it presumably became clear that discovery would not be undertaken—five months later in May of 1973—only 50 more hours were yet to be expended by Sullivan & Cromwell before the Bank was out. This equivalent of one more week's hard work was hardly unreasonable.[2]

This court has no hesitation in concluding that the total of 226 hours spent by attorneys at Sullivan & Cromwell is clearly reasonable and effected a dismissal in all the circumstances at the earliest reasonable moment. I award the Bank $12,500 in attor-

---

1. All parties to this indenture agree, and each holder of any debenture by his acceptance thereof shall be deemed to have agreed, that any court . . . in any suit against the Trustee for any action taken or omitted by it as Trustee . . . may in its discretion assess reasonable costs, including reasonable attorneys' fees, against any party litigant in such suit, having due regard to the merits and good faith of the claims or defenses made by such party litigant . . . . .

Indenture between Cyber-Tronics, Inc. and The Bank of New York, Trustee, dated July 1, 1967, § 10.11.

2. The Bank's decision to try to minimize legal fees by *not* moving for summary judgment was not only reasonable as viewed prospectively, but also correct as viewed retrospectively. For when the issue of summary judgment actually came before the court, on motion of plaintiffs in March of 1975, summary judgment was denied not only to the plaintiffs but to the Bank as well.

neys' fees under this rubric. This works out to an average of some $55 per hour—hardly an excessive hourly rate for a firm of the standing of Sullivan & Cromwell, having in mind the expertise required. See *Leighton v. New York, Susquehanna and Western R. Co.,* 455 F.2d 389, 392 & n. 5 (2d Cir. 1972).

■ In addition, I reaffirm that the threat in April and May 1975 to depose numerous officers of the Bank was a groundless, bad faith procedural move by attorney Bradley Brewer, which finding was the subject of specific affirmance by the Court of Appeals. 560 F.2d at 1089. This threat reasonably required, so the records reveal, the additional expenditure of 10 hours by Mr. Olasov.[3] I hereby award an additional $500 in counsel fees to the Bank for meeting this bad faith move.

■ Finally, affidavits show that from the commencement of this lawsuit until the Bank was out, the Bank's attorneys accumulated the extremely moderate sum of $205.40 in litigation-related expenses, and I award that additional sum to the Bank. I decline the Bank's request for a supplementary award for "stenographic services," which I deem to be a part of normal overhead; in addition, I decline to award expenses accumulated after the dismissal of the complaint as against the Bank, because of the difficulty in attributing such expenses to specific bad faith procedural moves.

Thus the total award of fees and expenses to The Bank of New York is $13,-205.40.

Turning to the awards to be made to defendants DASA Corporation and Arthur Andersen & Co., I am guided by the following passage from the Court of Appeals' remand order:

> The court's award of attorneys' fees to DASA and Andersen based on procedural bad faith or harassment . . . stands on a different footing. There was ample evidence to support a finding that Bradley Brewer acted in bad faith in taking some procedural steps (e. g., the appeal of mooted issues, the delay for discovery never undertaken, the motion for reargument made 5½ months after denial of appellants' motion for summary judgment, the making of frivolous motions for summary judgment against the Bank and Andersen, the motion to add parties on the basis of a misleading page of a letter taken out of context, the dragnet subpoenas served on Andersen and others, the threats to depose numerous Bank officers, etc.). However, in an action not itself brought in bad faith, an award of attorneys' fees should be limited to those expenses reasonably incurred to meet the other party's groundless, bad faith procedural moves. No attempt was made below to relate claimed expenses, costs, and fees to particular bad faith maneuvers. See *In re Boston & Providence R.R. Corp.,* 501 F.2d 545, 550 (1st Cir. 1974). Accordingly, we remand for more specific findings as to those procedural motions or other actions undertaken in bad faith, without justification or for an improper purpose, such as harassment or delay, and as to the expenses, costs, and attorneys' fees reasonably incurred by the opposing party or parties in meeting such improper motions, actions, or delays.

560 F.2d at 1088–89.

■ With respect to DASA Corporation, I have reviewed the record and I specifically find that, as applicable to it, each of the procedural steps listed by the Court of Appeals was in fact taken in bad faith.

As to the first appeal by plaintiffs of a mooted issue—the appeal of the denial of a preliminary injunction by Judge Motley, see 560 F.2d at 1082—the records of DASA's attorneys, the firm of Jacobs Persinger & Parker, reveal that 54 hours were required to deal with this matter. The second appeal by plaintiffs of mooted issues was from the dismissal of claims 1 and 2. See 524 F.2d 811 (2d Cir. 1975). There, DASA's records reveal 170 hours spent. The "delay for discovery never undertaken" resulted in

---

**3.** This time was not included in the $12,500 award, *supra.*

unnecessary time required to meet and defeat a second class action motion which had been adjourned for over a year on plaintiffs' representation that discovery would be undertaken. I find that the delay was sought in bad faith and that the time attributable to the opposition of the second motion was 18 hours. The bad faith motion for reargument made 5½ months after denial of plaintiffs' motion for summary judgment on claims 1 and 2 resulted necessarily in a denial as untimely. This required DASA's lawyers to spend 6 hours. As to the bad faith motion to add parties on the basis of a misleading page taken out of context, I do not consider attorneys' fees on this remand, having already awarded a fee, albeit modest, for that frivolous motion.

In addition to the bad faith moves listed as examples by the Court of Appeals, I find that plaintiffs' motion dated March 7, 1975 for summary judgment on claim 3 against DASA, on the ground that the reduction in the conversion price constituted a sale of an unregistered security, was also brought in bad faith to harass. Indeed, contemporaneously in the Memorandum and Order of April 14, 1975 denying that particular motion, I specifically noted that it was ill-founded on the merits, was not the subject of the pleadings, and was time-barred, and that it, together with another motion, was brought "for the sole purpose of delaying the trial," and that both motions " 'border on frivolity' and are made in bad faith." DASA's attorneys required 19 hours to oppose that motion.

On the eve of trial, three years after the commencement of the action, plaintiffs for the first time served summonses upon five individual defendants connected with DASA. It was clear that this was a bad faith effort to delay the commencement of the trial. A petition for mandamus for the same purpose was filed at about the same time and was denied by the Court of Appeals. The action as to all the new defendants was dismissed upon various motions, see 560 F.2d at 1089. The attorneys spent 8 hours on those motions, and 2 hours to oppose the mandamus in the Court of Appeals.

Finally, notwithstanding that as of August 1976 there was no final judgment pending from which plaintiffs could appeal, plaintiffs took an appeal anyway. By motion in August of 1976, DASA moved to dismiss the appeal. It is clear from the events at the time that plaintiffs knew that the action was not in an appealable posture; therefore the purported appeal could only have been for purpose of harassment. DASA's attorneys spent 38 hours in obtaining dismissal thereof.

I find that as to each of the foregoing, the amount of attorneys' time actually spent was reasonable and necessary to deal with the matters confronting them.

The vast bulk of the foregoing time it appears was spent by partner Michael Bayda and an experienced associate, George Kappus, both of whom have appeared before me on innumerable occasions. They, and their firm, are attorneys of quality and high standing, having the expertise required to deal effectively with the complex issues involved in this litigation. For the aforesaid 315 hours of work required to deal with three appeals in the Court of Appeals and several motions of varying complexity in the District Court, as well as other miscellany, I award $17,250 in counsel fees.

■ Finally, I turn to the application of Arthur Andersen & Co. Andersen, too, as the Court of Appeals specifically noted, 560 F.2d at 1088–89, was subjected to bad faith procedural steps: an appeal of mooted issues; a frivolous motion for summary judgment; and harassment by the service of dragnet subpoenas, which occurred even after its dismissal from the case. From the records of its lawyers, Breed, Abbott & Morgan, I find that 12.7 hours were reasonably required to repulse the frivolous summary judgment motion; 7.7 hours were expended on the appeal from mooted issues; and 45.6 hours were utilized in opposing the dragnet subpoenas. Having considered the "mix" of partner and associate time that went into the foregoing total of 66 hours, the standing of the firm, and the quality of the services, I conclude that these services

were necessary and the time spent was reasonable and I award $3,500 therefor. I decline Andersen's request for an award of attorneys' fees for the hours spent preparing the applications for attorneys' fees themselves.

Because of the difficulty, on the record before me, of apportioning DASA's and Andersen's expenses to specific bad faith moves by the plaintiffs, I am unable to award expenses—which do not appear to be substantial in any event—to either defendant.

On the present state of the record, the foregoing awards are assessed only against plaintiff-attorney Bradley R. Brewer. The parties hereto are directed to appear before me at 4:30 P.M. on May 31, 1978, for a determination of further steps herein, including (1) the timing and nature of a hearing to determine the liability, if any, of plaintiffs Roy E. Brewer and/or Simms C. Browning[4] for the fees assessed herein; (2) whether their attendance at such hearing is required; and (3) the subsidiary question of the continued representation of Roy E. Brewer by his son, Bradley R. Brewer, in view of the conflict of interest which now appears with respect to their liability for attorneys' fees.

No judgment is to be entered herein until the liability of all plaintiffs is resolved.

The foregoing is So Ordered.

## ON MOTION TO AMEND CAPTION

There remain before me but two final matters to be resolved; one is the question of possible joint liability by co-plaintiffs for attorneys' fees already awarded against plaintiff-attorney Bradley Brewer, and the other is a motion by former plaintiff Simms

C. Browning to amend the caption of this case so as to remove any reference to his name.

It should be noted that in proceedings following the rendering of my opinion of May 24, 1978, ante, p. 409, I determined that Bradley Brewer could continue to represent his father and co-plaintiff Roy Brewer, the latter having knowingly and effectively waived any claim of conflict of interest, and subsequently ruled, on further submissions, that Roy Brewer's poor health was a bar to his being brought from Nebraska to New York for depositions on the attorneys' fees issue. I am now informed by all defendants that they will not pursue further their claims against Roy Brewer for participation in bad faith procedural moves—as distinguished from the Bank's claims under the trust indenture—and that all claims with respect to Mr. Browning have been settled. It therefore remains only to enter judgment in accordance with my opinion of May 24, bearing in mind that the awards made there to The Bank of New York stand on two different footings.[1] Accordingly, judgment may now be entered (1) against Bradley Brewer alone on behalf of DASA Corporation, The Bank of New York, and Arthur Andersen & Co. in the respective amounts of $17,250, $500, and $3,500, and (2) against plaintiffs Bradley Brewer and Roy Brewer jointly and severally on behalf of the Bank in the amount of $12,705.40.[2]

Mr. Browning's motion seeking to delete his name and that of the now-disbanded "Browning Committee" from the caption of the case appears to be addressed to the discretion of the court. Cf. *Pennsylvania Insurance Co. v. Long Island Marine Supply Corp.*, 229 F.Supp. 186, 188 (S.D.

---

4. Browning, I am informed, has settled his liability with both the Bank and DASA. Only his possible liability to Andersen remains open.

1. $12,500 in fees and $205.40 in expenses were awarded to the Bank pursuant to § 10.11 of the trust indenture and § 315(e) of the Trust Indenture Act of 1939, 15 U.S.C. § 77*ooo* (e). See opinion of May 24, 1978, *ante*, at 409 n. 1. This award lies against all plaintiffs jointly, without regard to individual bad faith. The

balance of the Bank's award, $500, was the result of a specific bad faith procedural move by Bradley Brewer, who is now solely liable for that amount.

2. Obviously, to the extent that any party receives payment under a settlement with Simms Browning, any obligation of Bradley Brewer or Roy Brewer shall be deemed pro tanto satisfied.

N.Y.1964). Browning dissociated himself from the Brewers in 1976 immediately upon the rendering of the opinion by this court upon the close of the trial, 431 F.Supp. 959 (S.D.N.Y.1976). In the intervening period, he has litigated in good faith and now has settled all issues, including counsel fees. His desire to be dissociated from this case in name as well as in fact is entirely understandable. However, it has been made clear in recent opinions that Mr. Browning is no longer involved,[3] and I deem it inappropriate as this litigation draws to a close to change the caption to the possible confusion of those who have occasion to research this case. The motion is therefore denied.

The foregoing is so ordered.

---

3. See *Browning Debenture Holders' Committee v. DASA Corp.*, 454 F.Supp. 88, 92 n. 2 (S.D.N. Y.1978), and *Id.*, n. 1, 26 F.R. Serv.2d 166, 166 n.1 (2d Cir. 1978).