**WUNSCHEL LAW FIRM, P.C., Appellee,**

v.

**Larry D. CLABAUGH, Appellant.**

**No. 63634.**

Supreme Court of Iowa.

April 23, 1980.

Morris C. Hurd, of Hurd Law Firm, P.C., Ida Grove, for appellant.

James R. Van Dyke of Wunschel Law Firm, P.C., Carroll, for appellee.

Lee H. Gaudineer, Carlton G. Salmons, and Hedo M. Zacherle, Des Moines, for amicus curiae Committee on Professional Ethics and Conduct of the Iowa State Bar Ass'n.

Considered by LeGRAND, P. J., and HARRIS, McCORMICK, McGIVERIN, and LARSON, JJ.

McCORMICK, Justice.

The determinative question in this appeal is whether this court should approve contingent attorney fee contracts for the defense of unliquidated tort damage claims in which the fee is fixed as a percentage of the difference between the amount prayed for in the petition and the amount actually awarded. In entering judgment for plaintiff in this case, the trial court rejected defendant's contention that such contracts should not be approved. We reverse without prejudice and remand to permit plaintiff to seek recovery of fees on a quantum meruit basis.

This case originated as an action for attorney fees based on a contingent fee contract under which plaintiff Wunschel Law Firm, P.C., defended defendant Larry D. Clabaugh in a defamation suit in Crawford County District Court. The action for fees was tried to the court at law. The trial court entered judgment for plaintiff for $4270, with interest from January 7, 1977.

Viewing the evidence in its light most favorable to the judgment, the record shows defendant employed plaintiff to represent him in the defamation suit on September 18, 1975. Defendant previously had other counsel in the case, but that relationship had terminated. An order of the court gave defendant until October 1, 1975, to produce tax returns and financial statements, failing which he would be in default in that litigation.

He met with Russell S. Wunschel and James R. Van Dyke in plaintiff's office. Upon defendant's request to employ the firm, Mr. Wunschel told him the firm would represent him for a fee of fifty dollars per hour, with a retainer of $1000 to be credited against expenses and the fee. Defendant asked if an alternative arrangement was possible, and Wunschel advised him the fee could be based on a contingent fee contract, giving plaintiff one-third of any amount saved defendant under the $17,500 prayer of the petition in the defamation suit. The $1000 retainer would also be required. When defendant asked which arrangement would cost him more, Wunschel first refused to tell him, but then changed his mind and said, "It may cost you more under the contingent-fee contract." A contingent fee contract prepared by Wunschel was subsequently executed, and defendant paid the $1000 retainer.

Plaintiff represented defendant in a jury trial of the defamation suit which resulted in a judgment against defendant for $1750. Plaintiff subsequently billed defendant for $4270, showing the fee pursuant to the agreement as $5250, less the $1000 retainer, plus twenty dollars advanced for sheriff's costs. When defendant refused to pay the bill after the firm's demand, the present action was brought.

Although defendant raises other issues, we find it necessary to address only the question of the validity of the kind of contingent fee contract on which the action is based. Because the Iowa Code of Professional Responsibility for Lawyers is implicated, we requested and obtained an amicus curiae brief on the question from the Committee on Professional Ethics and Conduct of the Iowa State Bar Association, a commission of this court in ethics matters.

In its brief, the Committee states it found no case involving a challenge to a contingent fee contract in circumstances like those involved here. The Committee concluded that the present case "appears to be

unique in the annals of American jurisprudence." Our own research confirms that view.

Although they are rare, a number of cases exist in which contingent fees to defense counsel have been involved. *See, e. g., Dunham v. Bentley*, 103 Iowa 136, 142, 72 N.W. 437, 439 (1897) (agreement by defendant to pay thirty percent of her interest in estate property for the services of her attorneys in protecting it from creditors' claims); *Cline v. Zappettini*, 131 Cal.App.2d 723, 281 P.2d 35 (1955) (agreement by party in defense of counter-claims for breach of real estate contract and for real estate commission to pay attorney a percentage of broker fee saved); *Sedbrook v. McCue*, 104 Kan. 813, 180 P. 787 (1919) (challenge to attorneys' right to property received as contingent fee under agreement with client which gave them one-half of all property they saved the client in defending an action involving a mortgage on the land); *Lipscomb's Administrator v. Castleman*, 147 Ky. 741, 145 S.W. 753 (1912) (fee based in part on success in defending an action to set aside a deed); *Moss v. Richie*, 50 Mo.App. 75 (1892) (fee of $300 contingent on successful defense of ejectment action); *In re Wise*, 172 A.D. 491, 158 N.Y.S. 793 (1916) (agreement to defend claim against inheritance for small retainer and $5000 if the defense was successful); *Board of Education v. Thurman*, 121 Okl. 108, 247 P. 996 (1926) (fee based on twenty-five percent of amount saved in defending taxpayer suits). These cases are of little assistance here, however, because the attorneys in them were retained to defend claims relating to existing property or seeking liquidated damages and, thus, the fees were based on fixed values or sums. In addition, none of the cases involved a challenge to the fee on public policy grounds.

Other cases cited in the briefs are also plainly distinguishable. In a case in which a contingent fee contract was not involved, the court in *Leighton v. New York, Susquehanna & Western Railway*, 303 F.Supp. 599 (S.D.N.Y.1969), aff'd 455 F.2d 389 (2d Cir.), cert. denied, 406 U.S. 920, 92 S.Ct. 1777, 32 L.Ed.2d 120 (1972), simply approved the principle of permitting a fee to be based on the savings or reduction of financial losses of a client, rejecting the idea that the creation or production of a fund is essential to its validity. Defendant contends *Walls v. Russell*, 519 P.2d 936, 938 (Okl.App.1974), disapproved contracts like the one here. However, we find it did not. The *Walls* court merely held that when a statute provided for award of a reasonable attorney fee for the successful defense of a lien foreclosure action, a contract fixing the fee at forty percent of the amount thereby saved was not "an appropriate basis for determining a reasonable fee."

In *Priester v. Citizens National Trust & Savings Bank*, 131 Cal.App.2d 314, 280 P.2d 835 (1955), a contingent defense fee was voided as unreasonable in the circumstances when the contract was entered during the existence of the attorney-client relationship, and the lawyer's co-executors did not meet their burden to show that the transaction was fair and equitable. We applied the same principle in voiding the plaintiff's contingent fee contract in *Lawrence v. Tschirgi*, 244 Iowa 386, 57 N.W.2d 46 (1953). Because the contract in the present case was made at the inception of the relationship, the *Priester-Lawrence* principle has no application here.

No case has involved a contingent defense fee predicated on a percentage of the amount saved under the prayer in defending an unliquidated tort claim. We therefore depend on principles governing fee contracts generally.

The essential characteristic of a contingent fee contract is that the attorney's right to be paid any amount for his services is dependent on the result obtained. *See, e. g., Carmichael v. Iowa State Highway Commission*, 219 N.W.2d 658 (Iowa 1974). Thus nothing in the nature of the contract limits its use to employment of lawyers by plaintiffs.

We have long recognized the validity of contingent fee contracts generally. *See Wallace v. Chicago , Milwaukee & St. Paul Railway*, 112 Iowa 565, 567–68, 84 N.W. 662,

663 (1900). We have disapproved contingent fees based on a percentage of the property obtained for the client in a divorce case on public policy grounds. *See In re Estate of Sylvester*, 195 Iowa 1329, 1333, 192 N.W. 442, 443–44 (1923). *Lawrence v. Tschirgi* exemplifies another situation in which a contract was disapproved. In *Carmichael v. Iowa State Highway Commission*, 219 N.W.2d at 664, we construed an ambiguous contingent fee contract with a view toward arriving at a "fair, rational and probable contract."

These holdings are in accord with the principle that the courts have authority to monitor and determine the reasonableness of contingent fee contracts under their inherent power to regulate the bar. *See Dunn v. H. K. Porter Co.*, 602 F.2d 1105, 1109 (3d Cir. 1979); *Anderson v. Kenelly*, 37 Colo.App. 217, 218, 547 P.2d 260, 261 (1976) ("Under its general supervisory power over attorneys as officers of the court, a court may and should scrutinize contingent fee contracts and determine the reasonableness of the terms thereof."); *Rosenthal v. First National Bank*, 127 Ill.App.2d 371, 376, 262 N.E.2d 262, 265 (1970); *American Trial Lawyers Association v. New Jersey Supreme Court*, 66 N.J. 258, 330 A.2d 350 (1974) (upholding a supreme court rule establishing a graduated scale of maximum contingent fees); *Harmon v. Pugh*, 38 N.C. App. 438, 444, 248 S.E.2d 421, 424 (1978).

This authority is implemented in Iowa by the standards promulgated in the Iowa Code of Professional Responsibility for Lawyers. DR2–106 concerns fees for legal services. It provides:

(A) A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee.

(B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. Factors to be considered as guides in determining the reasonableness of a fee include the following:

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

(3) The fee customarily charged in the locality for similar legal services.

(4) The amount involved and the results obtained.

(5) The time limitations imposed by the client or by the circumstances.

(6) The nature and length of the professional relationship with the client.

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

(8) Whether the fee is fixed or contingent.

(C) A lawyer shall not enter into an arrangement for, charge or collect a contingent fee for representing a defendant in a criminal case, or either party in any action involving domestic relations.

EC5–7 recognizes circumstances in which a contingent fee is appropriate. It provides:

The possibility of an adverse effect upon the exercise of free judgment by a lawyer on behalf of his client during litigation generally makes it undesirable for the lawyer to acquire a proprietary interest in the cause of his client or otherwise to become financially interested in the outcome of the litigation. However, it is not improper for a lawyer to protect his right to collect a fee for his services by the assertion of legally permissible liens, even though by doing so he may acquire an interest in the outcome of litigation. Although a contingent fee arrangement gives a lawyer a financial interest in the outcome of litigation, a reasonable contingent fee is permissible in civil cases because it may be on the only means by which a layman can obtain the services of a lawyer of his choice. But a lawyer, because he is in a better position to evaluate a cause of action, should enter into a

contingent fee arrangement only in those instances where the arrangement will be beneficial to the client.

EC2–17 is also relevant. It provides:

The determination of a proper fee requires consideration of the interests of both client and lawyer. A lawyer should not charge more than a reasonable fee, for excessive cost of legal service would deter laymen from utilizing the legal system in protection of their rights. Furthermore, an excessive charge abuses the professional relationship between lawyer and client. On the other hand, adequate compensation is necessary in order to enable the lawyer to serve his client effectively, and to preserve the integrity and independence of the profession.

Finally, EC2–20 deals directly with situations in which a contingent fee contract is or is not proper. It provides:

Contingent fee arrangements in civil cases have long been commonly accepted in the United States in proceedings to enforce claims. The historical bases of their acceptance are that (1) they often, and in a variety of circumstances, provide the only practical means by which one having a claim against another can economically afford, finance, and obtain the services of a competent lawyer to prosecute his claim, and (2) a successful prosecution of the claim produces a *res* out of which the fee can be paid. Because of the human relationships involved and the unique character of the proceedings, contingent fee arrangements in domestic relation cases are rarely justified. In administrative agency proceedings contingent fee contracts should be governed by the same consideration as in other civil cases. Public policy properly condemns contingent fee arrangements in criminal cases, largely on the ground that legal services in criminal cases do not produce a *res* with which to pay the fee.

Under our authority to monitor and determine the reasonableness of contingent fee contracts as implemented in the ethical strictures, we must decide whether the kind of contingent fee contract challenged in this case conforms to sound public policy. It is not necessary to decide whether other kinds of contingent fee contracts for defense of civil cases will be approved.

■ A contract which contravenes public policy will not be enforced by the courts. *See, e. g., Rowen v. Le Mars Mutual Insurance Co.*, 282 N.W.2d 639, 650 (Iowa 1979); *Tschirgi v. Merchants National Bank*, 253 Iowa 682, 689–90, 113 N.W.2d 226, 230 (1962). This is a delicate power which "should be exercised only in cases free from doubt." *Richmond v. Dubuque & Sioux City Railroad*, 26 Iowa 191, 202 (1868). One ground for invalidating a contract on policy grounds is its contravention of "any established interest of society." *Liggett v. Shriver*, 181 Iowa 260, 265, 164 N.W. 611, 612 (1917). It is not necessary that the contract actually cause the feared evil in a given case; its tendency to have that result in sufficient. *Jones v. American Home Finding Association*, 191 Iowa 211, 213, 182 N.W. 191, 192 (1921). The principles in our cases are consistent with the standards for determining whether a contract contravenes public policy which are delineated in Restatement (Second) of Contracts §§ 320, 321 (Tent. Draft No. 12, 1977).

The Committee states its position on the policy issue in its brief as follows:

If a contingent fee is to be allowed a defense lawyer in litigation where the demand is for an unliquidated amount, the fee contract may be in abdication of the attorney's responsibility to consider both his and his client's interests in determining a proper fee. EC2–17. Moreover, when the plaintiff's demand is for other than a liquidated claim, negotiation of a contingent fee may sacrifice the objective that a fee be reasonable under all circumstances. EC2–17. In particular situations, the fee may be unreasonable and excessive, DR2–106(A), since it is tied to the prayer in plaintiff's petition and may disregard the guides used in determining a reasonable fee. DR2–106(B). Such a fee may not be comparatively beneficial to the client. EC5–7.

It is a matter of common experience that the *ad damnum* clause of a pleading will not always bear a logical relationship to the amount of any recovery. Plaintiffs' attorneys fix the demanded damages for a variety of reasons and at times under strained circumstances. The demand may be set unreasonably high for the psychological impact upon a defendant when the petition is served. It may be set high to hedge against future inflation, increases of verdicts in like cases, and the desire to avoid amendment of the prayer; or even later raised by amendment. (It should be noted that this would have had no effect in the case at bar). It may be calculated when the attorney has little or no understanding of the extent of injuries for which his client lays claim. It may be thrown into a pleading in the heat of a chase to beat the court house time stamp and it may bear a claim for punitive damages which mirrors the motivational passion of the aggrieved plaintiff.

In litigation where the petition demands damages which are not fixed by contracts, notes, or mortgages, etc., and in which the dispute concerns claims for pain, suffering, mental anguish, disfigurement, loss of ability to work, loss of reputation, exemplary damages, etc., rather than tangible properties, the prayer of a plaintiff's petition is a precarious foothold to sustain a matter so important as the negotiation of a contingent fee with a defense client. It is hard to imagine that a lawyer would tell his client all the variables and imponderables that figure into the dollar value in a petition against him and harder still to believe that a defendant truly knowledgeable of the basis for the prayer against him would permit his lawyer to take a fee measured by the difference between that prayer and his lawyer's skills before the jury." EC2–19. It is difficult to believe, upon reflection, that such a fee arrangement in the long run will foster the harmony a lawyer must seek to maintain with his client where fees are concerned. EC2–23.

.    .    .    .    .    .

The Committee believes that the guiding principle for any fee or an agreement for a fee is that it is, under all of the circumstances known at the time, reasonable. Both parties must have sufficient information upon which to make an informed decision; this includes the client. The lawyer knows that a jury verdict for the prayer for unliquidated damages is rare. The client does not. The lawyer knows that even if a default is entered, damages must be proved and again, it is rare, in all cases claiming unliquidated damages, for a judgment entry upon default to be for the amount of the prayer. The client may not. Many times the client believes that if he or she loses the case, the prayer will be the judgment entered. The lawyer knows that this is not the case. The opposite probably is true if the claim is liquidated; however, if it is unliquidated, the client simply does not have sufficient knowledge or information upon which to make an informed decision.

This situation further lends itself to other potential abuses; abuses that probably will not occur but will be thought to have occurred in the mind of the public. The public may believe, because of the lawyer's superior knowledge, that there has been overreaching or that collusion has occurred between the lawyers to [artificially] inflate the prayer to the defense lawyer's advantage. This would be especially true in the event the prayer was increased by amendment.

The critical factors in determining the amount of a contingent fee are (1) the percentage and (2) the amount against which the percentage is taken in order to determine the fee. From the plaintiff's perspective, the percentage requires the client's agreement and the amount against which it is taken is, at a later date, either determined by a jury or, again, by agreement of the client in settlement. A lawyer (plaintiff or defendant) cannot, independently of the client, control the amount of the fee. Also, gen-

erally the case must be resolved favorably to the client before any fee is due. The same is generally true, but to a lesser extent, when such a contingent fee arrangement applies to the defense of a liquidated amount.

However, such a contingent fee arrangement in the defense of an unliquidated tort claim has missing the critical factor that the amount against which the percentage is taken is determined, at a later date, by an independent party or by agreement of the client. Also, the lawyer does not have to establish liability (or lack thereof) to be entitled to a fee.

The Committee therefore believes that since these critical factors are missing from a defense-contingent fee arrangement in an unliquidated tort action, that such fee is based upon *pure* speculation. A fee based *purely* upon speculation cannot be reasonable as required by the *Code*. The Committee is unanimous in its decision that in a tort action claiming unliquidated damages, a defense contingent fee based upon a percentage of the difference between the prayer in the plaintiff's petition and the jury's verdict is improper. Its decision is the same even if the actual amount of the prayer is written into the contingent fee contract (as in the case at bar) so that the fee would not increase if the prayer is increased.

We approve and adopt the Committee's view. We agree that the overriding principle from the ethical standards is that the fee must be reasonable. We concur with the Committee that a contingent fee contract is unreasonable when it provides for determination of the fee by factors having no logical relationship to the value of the services. We also agree the present contract is of that kind.

We hold that a contingent fee contract for the defense of an unliquidated tort damage claim which is based upon a percentage of the difference between the prayer of the petition and the amount awarded is void. Accordingly, we reverse the trial court. We do not decide whether the fee charged in the present case is reasonable or not. We simply hold that contracts of this type are likely to result in unreasonable fees in too many cases and thus are contrary to sound public policy.

The contract is not invalid because of illegality of the services but merely because on policy grounds we cannot approve the way in which the fee was to be calculated. In this situation, plaintiff performed valuable services for defendant for which it is entitled to be compensated. Therefore our decision is without prejudice to plaintiff's right to obtain a reasonable fee from defendant on a quantum meruit basis. *See Lawrence v. Tschirgi*, 244 Iowa at 399–400, 57 N.W.2d at 53. *See generally Annot.*, 100 A.L.R.2d 1378 (1965).

Because this disposition is without prejudice, the general rule barring recovery on the same claim on a new theory does not apply. *See Restatement (Second) of Judgments* § 48.1(1)(b) (Tent. Draft No. 1, 1973). Nor is recovery barred by the rule against splitting a claim. *See id* at § 61.2(b).

In the interest of judicial economy, we hold that upon remand plaintiff shall have ten days from the date of procedendo within which to amend its petition in the present action to seek recovery for its services on a quantum meruit basis.

REVERSED AND REMANDED.